31 A.3d 239

**Shawn JOHNSON**

v.

**STATE of Maryland.**

**No. 137, Sept. Term, 2010.**

Court of Appeals of Maryland.

Oct. 27, 2011.

Andrew S. Ormes, Assigned Public Defender (Cory C. Black, Assigned Public Defender, Washington, DC), on brief, for Petitioner.

Sarah Page Pritzlaff, Asst. Atty. Gen. (Douglas F. Gansler, Atty. Gen. of Maryland, Baltimore, MD), on brief, for Respondent.

Argued before BELL, C.J., HARRELL, BATTAGLIA, GREENE, *MURPHY, ADKINS and BARBERA, JJ.

BARBERA, J.

Petitioner Shawn Johnson was tried before a jury in the Circuit Court for Baltimore City and convicted of robbery, conspiracy to commit armed robbery, and related offenses.

---

* Murphy, J., now retired, participated in the hearing and conference of this case while an active member of this Court; after being recalled pursuant to the Constitution, Article IV, Section 3A, he also participated in the decision and adoption of this opinion.

At trial, the State admitted, among other evidence, two inoperable cell phones allegedly used by Petitioner's cousin, Stanford Reid, who was an admitted conspirator and later a State's witness at Petitioner's trial. The cell phones, along with other evidence, were sent to the jury during deliberations. While deliberating, the jury sent a note to the court disclosing that one of the jurors inserted his own battery into at least one of the cell phones, turned it on, and discovered information corroborative of Reid's testimony. The court informed counsel of the note.

Petitioner moved for a mistrial on the ground that the action of the juror constituted an improper investigation, thereby violating his right to an impartial jury guaranteed by the Sixth Amendment to the United States Constitution. The court declined to declare a mistrial, reasoning that any potential prejudice was cured by its instruction to the jury to disregard the evidence and by the court's receiving no response to its question to the jury, as a whole, whether any of the jurors was "unable to comply" with the court's instruction. On appeal to the Court of Special Appeals, Petitioner challenged the denial of the mistrial. That court affirmed the conviction in an unreported opinion.

We granted Petitioner's petition for writ of certiorari to review the trial court's denial of the requested mistrial. We hold that the trial court abused its discretion in denying the mistrial without first conducting a *voir dire* of the jury to ascertain the nature and scope of potential prejudice resulting from at least one juror's exposure to the electronic data on the cell phone. Petitioner is therefore entitled to a new trial.

## I.

This appeal arises out of an early-morning robbery of a McDonald's restaurant on Howard Street, in downtown Baltimore City. Janice Roberts, the victim of the robbery and longtime manager of the McDonald's, testified as the State's lead witness. Roberts testified that she reported to work at the McDonald's at 3:00 a.m., on the day of the crime. She

unlocked the door, crossed the room to turn off the alarm and, upon returning to the door to re-lock it, was confronted by a man wearing a black coat, jeans, and what appeared to be fake dreadlocks. The man pushed through the door and, once inside, put a gun to Roberts' back and told her, "Go to the back and give me the money." He followed Roberts into the back office where the safe was located. The office was dark, so the man took out a cigarette lighter and flicked it to illuminate the door to the safe. At that time, Roberts saw the man's face and recognized him as someone who patronized the McDonald's. She recognized his eyes, in particular. By means of a photo array, Roberts later was able to identify the man she recognized as Petitioner.

While Roberts was opening the safe and retrieving the money inside, Petitioner answered a ringing cell phone. Roberts could hear the voice of the caller, but could not discern the words spoken. Petitioner spoke with the caller for "just a minute," before hanging up. After receiving the money from Roberts, Petitioner fled through the back door of the restaurant and into the alley behind it.

Roberts immediately called 9–1–1. The police arrived within a few minutes. Roberts gave the police a description of the robber, including that he wore a black coat, jeans, and "fake dreads."

Officer Rivera was one of the officers who responded to the dispatch about the robbery. Upon arrival at the scene, he found a man in the alley behind the McDonald's. That man was later identified as Stanford Reid, Petitioner's 18–year–old cousin and admitted accomplice in the robbery. The police seized from Reid the deposit bag containing the stolen money, an unloaded handgun wrapped in a coat, and two cell phones. The police also found in the alley a wig of fake dreadlocks. The police asked Roberts if she could identify Reid as the robber, but she could not.

Reid implicated Petitioner in the robbery, leading the police to bring Roberts to the police station, three days after the crime, to review a photographic array. Roberts unequivocally

identified Petitioner, stating that he was a patron of the McDonald's. Roberts made a statement to that effect, and told the police that she saw Petitioner again later on the day of the crime, when he came into the McDonald's as a restaurant patron. Roberts again identified Petitioner as the robber, in court.

Reid testified as a State's witness that he served as the lookout during the robbery. He stood at a bus stop near the entrance to the McDonald's. From that vantage point, he watched Petitioner enter the McDonald's. Petitioner was wearing a "mop fashioned to look like dreadlocks." Reid testified that he had two cell phones at that time. He used one of them to call Petitioner and inform him that a woman at the bus stop had "seen what was going on," and was making a call on her cell phone to inform the police. Reid said that he told Petitioner that the "police were on their way."

Reid did not see Petitioner leave the McDonald's. Reid testified that he received a cell phone call from Petitioner at 3:08 a.m., who told him to retrieve from the alley the proceeds from the robbery. Reid found the money in what he described as a "plastic deposit bag" and the gun, and he wrapped them in his coat. As he walked out of the alley toward Howard Street, the police arrested him. At the time of arrest, Reid had a McDonald's bag (with money in it), a gun, and two cell phones in his possession. The two cell phones were admitted into evidence during Reid's testimony. Both cell phones were powerless, evidently because the batteries had been removed.

The jury began deliberations at approximately 2:15 p.m. on August 1, 2008. Soon thereafter, the jury sent a note to the court asking, "Do we have confirmation that someone called Stanford [Reid]. Was it Shaun's [ (Petitioner's) ] phone # ?" The court responded to the jury in writing, stating, "You have received all the evidence. You must rely on your own memory."

At approximately 4:15 p.m., the jury sent another note to the court, asking, "If we can't agree what is the next step?"

**144**

The court instructed the jury on its duty to deliberate, and added:

I want to remind everybody not to discuss this case with each other or anyone else. Don't investigate the case for yourself. Don't look up anything for yourself . . . don't look up anything on the internet. You can't do that. Your decision has to be based on the evidence. The trial is over and you've received all the evidence. And your decision must be based on the evidence, along with all reasonable and logical inferences that flow therefrom.[1]

The jury was then excused for the weekend. The jury resumed deliberations on the following Monday morning. Within thirty minutes, the jury sent a note stating: "One of the jurors turned on the cell phone (using their own battery) and found a call was placed to [Petitioner] at 3:08 AM. What should we do with this information disguard [sic] it?"

The court informed the parties of the note, and the following discussion between the trial court and counsel ensued:

THE COURT: The question is, "One of the jurors turned on the cell phone using their own battery." Now, who would think—I must have told them ten times during the trial don't investigate the case for yourself. You've got to rely on the evidence. I'm thinking about, very seriously about making a list of every possible thing that they could do and sending it back to them. I mean, it's unbelievable. It says, "and found a call was placed to Shawn at 3:08." Was there testimony that there was a call placed to Shawn at or around three o'clock?

[DEFENSE COUNSEL]: Yes.

[STATE]: Actually, Your Honor, the, one of the witnesses testified that Shawn called him.

---

1. The court also informed the jury, as part of the court's preliminary instructions that the jurors were "not free to look up any terms in the dictionary or internet," or "to ask anyone outside this courtroom," and the jurors "must base [their] decision entirely upon the evidence received in this courtroom, along with all reasonable and logical inferences that flow therefrom" and "can't investigate the case for" themselves.

THE COURT: Him, yes.

[DEFENSE COUNSEL]: It was, it was both.

THE COURT: Mm-hmm.

[DEFENSE COUNSEL]: Your Honor, I'm gonna be moving for a mistrial. I mean, that amounts, clearly, that amounts to an investigation. Clearly, that's information that the jury did not have and should not have had access to. They were supposed to rely on—

THE COURT: Well, you're right. But, if it's in testimony—what I'm going to do is poll them, also.

The trial court then briefly discussed with counsel another note from one of the jurors, unrelated to the misconduct. The court brought the jury into the courtroom, addressed the unrelated note, then turned to the note about the juror's misconduct:

THE COURT: ... Now, contrary to my direct instruction, to my recollection, there was no battery in that cell phone when you got it. I have told you all you must rely on the evidence presented during the course of this trial, not to investigate the case for yourself, not to do anything. So whoever put that battery—and I don't want to know who it was—in, although ingenuous, should not have done it.

Now, there may—so you have to disregard whatever you heard or saw on that cell phone. The cell phone was in evidence, but it's like a gun with no bullets. You can feel and examine the gun, but you can't shoot it, because it don't have no bullets in it. . . .

Now, there may or may not have been testimony regarding telephonic conversations to and from individuals in this case. Again, that's not up to me. That's up to your recollection of the evidence. You can use that. But you cannot use, directly or indirectly ... what, if anything, you saw and/or heard, without limitations, once you placed the battery in the phone and activated it. Does everybody understand that?

It's just as if I struck it from, during the course of the trial, I'm asking you all now to strike it from your memories and

not use it in any way or even *discuss it in any way* during deliberations. And furthermore, if it was discussed during deliberations, you have to strike it from your deliberations and then start redeliberating from that point on. Does everybody understand the significance of that? Because there could have been a whole slew of stuff on that phone, none of which had to do with this case. Does everybody understand that?

After that, the court asked:

Now is there anyone who is unable to comply with that instruction during deliberation? Raise your hand.

(No Response.)

All right. Thank you. You're now released back into deliberations.

Once the jury had returned to its deliberations, the court denied Petitioner's mistrial request:

THE COURT: [Defense counsel], having polled the jury and not having a response, I don't find there's manifest necessity to declare a mistrial. I think they now know . . . I must have told them five, six, ten times.

[DEFENSE COUNSEL]: Exactly, Your Honor. But, Your Honor, I would take exception. I, clearly, you cannot unring a bell.

THE COURT: Okay. [Defense counsel], I already denied your motion.

[DEFENSE COUNSEL]: Yes, Your Honor.

THE COURT: It's on the record. I polled them. I instructed them again. I polled them. I essentially chastised them[.]

Four and a half hours after resuming its deliberations, the jury reached its verdict. The jury found Petitioner guilty of robbery, second degree assault, conspiracy to commit armed robbery, and theft of property with a value over $500. The jury found Petitioner not guilty of armed robbery, first-degree assault and related handgun offenses.

Petitioner moved for a new trial based on the jury conduct in question. The court denied the motion and sentenced Petitioner to twenty years' imprisonment for the conspiracy to commit armed robbery conviction and a consecutive five-year sentence for the robbery conviction.

The Court of Special Appeals affirmed, in an unreported opinion, the trial court's refusal to declare a mistrial after learning of the juror misconduct. The Court of Special Appeals concluded that the unknown juror's failure to follow the trial court's "instructions to the letter ... did not, in our view, rise to the level of conducting internet, or other, independent research." The court emphasized that, similar to *Allen v. State*, 89 Md.App. 25, 597 A.2d 489 (1991), the jury acted in good faith by "immediately inform[ing]" the trial court of the conduct. The court also noted that Roberts (the robbery victim) testified "without contradiction" that the intruder had received a call while inside the McDonald's. Moreover, the trial court instructed the jurors to disregard the information and asked them whether they would be able to do so. Because no juror indicated that he or she would be unable to disregard the information, and the trial court was "able to observe the demeanor of the jurors and the impact of its instructions to the jury concerning the cell phone," the Court of Special Appeals determined that it was "unable to conclude that the juror's action in placing a battery into the cell phone amounted to egregious misconduct."

Petitioner filed a timely petition for writ of certiorari, which we granted, to address the following two questions:

I. Is a juror's impermissible extra-judicial investigation that exposes the jury to information never entered into evidence presumptively prejudicial to a criminal defendant's right to a fair and impartial jury trial?

II. Did the ruling below circumvent prior precedent in holding that a curative instruction alone is sufficient to support a trial court's denial of a motion for new trial based on established juror misconduct?

Although neither question mentions directly the trial court's decision not to declare a mistrial upon learning of the juror misconduct, both questions implicate the correctness of that ruling.

## II.

■ Petitioner's arguments for why he is entitled to a new trial are grounded in the Sixth Amendment's guarantee of "a . . . public trial by an impartial jury," U.S. Const. amend. VI, and the similar protection accorded criminal defendants in Article 21 of the Maryland Declaration of Rights.[2] "Inherent in both documents are the paramount notions of justice and fair process during criminal proceedings." *Dillard v. State,* 415 Md. 445, 455, 3 A.3d 403, 408 (2010) (quoting *Jenkins v. State,* 375 Md. 284, 299, 825 A.2d 1008, 1017 (2003)) (internal quotation mark omitted).

■ Implicit in the right to an impartial jury trial is the right to have the jury's verdict be "based solely on the evidence presented in the case." *Couser v. State,* 282 Md. 125, 138, 383 A.2d 389, 397 (1978); *accord Turner v. Louisiana,* 379 U.S. 466, 472–73, 85 S.Ct. 546, 13 L.Ed.2d 424 (1965) ("[T]he 'evidence developed' against a defendant shall come from the witness stand in a public courtroom where there is full judicial protection of the defendant's right of confrontation, of cross-examination, and of counsel."); *Patterson v. Colorado,* 205 U.S. 454, 462, 27 S.Ct. 556, 51 L.Ed. 879 (1907) ("The theory of our system is that the conclusions to be reached in a case will be induced only by evidence and argument in open court, and not by any outside influence, whether of private talk or public print"). Thus, consideration

---

2. Article 21 of the Maryland Declaration of Rights states that "in all criminal prosecutions, every man hath a right . . . to a speedy trial by an impartial jury." The opinions of the United States Supreme Court interpreting the Sixth Amendment are persuasive in interpreting Maryland's parallel right found in Article 21. *Lawrence v. State,* 295 Md. 557, 562, 457 A.2d 1127, 1129 (1983).

by the jury of extrinsic evidence implicates the defendant's constitutional right to a fair trial before an impartial jury.

In the present case, it is undisputed that, at some point after the jury began its deliberations, at least one member of the jury gained access to new information, not developed in any fashion during the evidentiary portion of the trial, by inserting a battery in at least one of the powerless cell phones sent into the jury room. The unnamed juror's gaining access to the electronically stored data in the cell phones was clear and intentional misconduct, and the State does not argue to the contrary.

Serious juror misconduct "raise[s] fundamental concerns" regarding "whether the jury would reach their verdict based solely upon the evidence presented at trial or whether it would be improperly influenced," *Jenkins,* 375 Md. at 301, 825 A.2d at 1018, and thereby run afoul of the protections afforded by the Sixth Amendment and Article 21. Yet not all juror misconduct necessarily implicates the defendant's right to a fair trial by an impartial jury. The range of juror misconduct varies, as does the form and scope of the court's response to it. To be sure, some instances of juror misconduct so clearly and irreparably prejudice the defendant's right to be tried by an impartial jury that the only remedy is mistrial. Often, though, the extreme remedy of mistrial is not mandated. Indeed, depending upon the nature, scope, and timing of the misconduct, the judge may have one or more reasonable means of curing any possible prejudice to the defendant. Given the particular situation confronting the court, a curative instruction or replacement of the miscreant juror with an alternate juror might suffice to remedy the misconduct.

Other times, the juror misconduct is such that prejudice to the defendant must be presumed. In those situations, a mistrial (or the post-trial remedy of a new trial) is the proper remedy unless the State overcomes the presumption of prejudice. *Jenkins, supra,* provides an example. That case involved the post-trial discovery that during trial a juror had "non-incidental, intentional and personal" contact with a

State's witness, in direct violation of the court's instructions. 375 Md. at 319, 825 A.2d at 1029. We recognized that "the strong possibility of prejudice [to the defendant] invokes the presumption," *id.* at 329, 825 A.2d at 1035, which the State was unable to rebut, *id.* at 340–41, 825 A.2d at 1041. As a consequence, Jenkins was entitled to a new trial. *See Stokes v. State,* 379 Md. 618, 638, 641–42, 843 A.2d 64, 75, 78 (2004) (stating that "the presence of alternate jurors during the jury deliberations ... sufficiently imping[es] upon the defendant's constitutional right to a jury trial ... to create a presumption of prejudice"; and holding that a new trial was required because Md. Rule 5–606 prevents a juror from impeaching his or her own verdict, and, as such, there was no opportunity either to prove or rebut potential prejudice resulting from the improper influence;); *Wardlaw v. State,* 185 Md.App. 440, 452–54, 971 A.2d 331, 338–39 (2009) (presuming prejudice when it was discovered at the beginning of deliberations that a juror had conducted internet research about a State's witness's diagnosis of oppositional defiant disorder and shared with fellow jurors that lying was a common symptom of the disorder; and holding that the defendant was entitled to a mistrial because prejudice was presumed where credibility was a "crucial issue," the presumption was not rebutted, and the court did not properly exercise its discretion in denying the motion for new trial because it did not *voir dire* the jurors).

The parties disagree about whether the misconduct at issue here is of the sort that requires a presumption of prejudice. Petitioner asserts that the misconduct in the present case is so egregious that it warrants the presumption, which the State did not rebut, and therefore entitling him to the mistrial he sought. The State is of the view that the jury misconduct in this case was not so serious as to have been treated as presumptively prejudicial. The State argues that: (1) unlike in *Jenkins,* the misconduct did not involve any improper communication with the jury; rather, the misconduct took place within the jury room and with an exhibit introduced into evidence and as such, the conduct did not directly violate the

trial court's instructions; (2) the information was brought to the court's attention immediately following the misconduct and the note from the jury disclosed fully to the trial court the nature and substance of the information received; and (3) the trial court's curative instruction was sufficient to rehabilitate the jury misconduct and ensure that no prejudice would result.

We need not resolve the parties' debate as to whether the juror misconduct that occurred in this case (certainly quite serious) is presumed prejudicial. This is because, based on what the trial court both knew and did not know about the misconduct, the court acted precipitously in denying the requested mistrial, and thereby abused its discretion.

"Generally, appellate courts review the denial of a motion for a mistrial under the abuse of discretion standard." *Dillard*, 415 Md. at 454, 3 A.3d at 408. In cases such as this, though, a proper exercise of discretion must be prefaced by an adequate investigation: "[T]he court has a duty to fully investigate allegations of juror misconduct before ruling on a motion for a mistrial, and that failure to conduct a *voir dire* examination of the jurors before resolving the issue of prejudice is an abuse of the trial judge's discretion." 415 Md. at 461, 3 A.3d at 412. *Accord Marshall v. United States*, 360 U.S. 310, 312, 79 S.Ct. 1171, 3 L.Ed.2d 1250 (1959) (per curiam) (stating that the trial court possesses wide discretion in deciding how to pursue an inquiry into the nature and effect of information that comes to a juror improperly and its potential effect upon the entire jury). The defendant need not make a specific request that the trial court perform a *voir dire* of the jurors as part of its investigation into the jury's misconduct because, "[o]nce the parties raise the issue of [jury misconduct], the trial judge must conduct a meaningful inquiry that will resolve the factual questions." 415 Md. at 459, 3 A.3d at 411.

The facts of *Dillard* are instructive. In that case, the State learned during trial and informed the court that, "following the testimony of the State's primary law enforcement witness, two jurors patted the witness on the back and commended him

for doing a 'good job.' " 415 Md. at 448, 3 A.3d at 405. At the defendant's request, the trial court brought the jurors into the courtroom and identified the offending jurors but did not inquire into their motives for the improper contact. *Id.* at 452, 3 A.3d at 407. Because the juror misconduct raised questions regarding the juror's ability to reach an impartial verdict, and the trial court failed to conduct a meaningful inquiry into the factual questions raised by the misconduct, we reversed the trial court's denial of the defendant's motion for a mistrial, as an abuse of the court's discretion. *Id.* at 457–58, 3 A.3d at 410.

*Dillard* teaches that, when the court is informed that one or more of the jurors might have been influenced by information not presented to the jury in the form of evidence or legitimate argument of counsel, and the defense reacts with a motion for a mistrial, the court must conduct a sufficient inquiry to ascertain whether the jury's deliberations have been corrupted, before the court fairly can exercise its discretion in determining whether a mistrial is warranted. *See id.* at 465, 3 A.3d at 415 ("[T]he court cannot evaluate the propriety and effect of a curative instruction unless it fully inquires about or knows the extent of the prejudice to the defendant."). The level of inquiry is dictated by the particulars of the misconduct.

In the case at bar, the trial court was careful at several points during trial to instruct the jury not to engage in any sort of outside investigation. Moreover, when the jury informed the court (which in turn promptly informed counsel) of the juror's access to the electronically stored data in the cell phones, the court reminded the jury of the court's "direct instruction" to rely solely on the evidence presented and "not to investigate the case for yourself." The court added: "So whoever put that battery—and I don't want to know who it was—in, although ingenuous, should not have done it." The court then admonished the jurors that they "disregard whatever you heard or saw on that cell phone." Further, "you cannot use, directly or indirectly ... what, if anything, you

saw and/or heard, without limitations, once you placed that battery into the phone and activated it. Does everybody understand that?" The Court added that the jurors must "strike it from your memories and not use it in any way or even discuss it in any way during deliberations. And furthermore, if it was discussed during deliberations, you have to strike it from your deliberations and then start redeliberating from that point on." After that, the court asked: "Now is there anyone who is unable to comply with that instruction during deliberation? Raise your hand." The record shows that there was "No Response." At that point, the court said: "All right. Thank you. You're now released back into deliberations." All of what the court did was correct, as far as it went. We conclude, though, that the circumstances of this case required the court to do more.

We begin with the recognition that the information the juror accessed from the cell phone—that a call had been placed to Petitioner at a time at or near when the victim testified the robber received a cell phone call—was of central importance to what the jury ultimately had to decide in this case. Reid testified as part of a plea agreement with the State, admitting his complicity in the robbery. He testified that he had made a call to Petitioner while Petitioner was in the McDonald's, warning him that the police might be on their way to the scene. Reid further testified that Petitioner called him after the robbery with the direction to Reid that he retrieve the robbery proceeds and handgun from the alley behind the McDonald's. Other evidence showed that the police found Reid (not Petitioner) moments after the robbery occurred. Reid had in his possession two cell phones, a McDonald's bag and a gun. The jury thus had to determine whether to believe Reid or accept Petitioner's defense that it was Reid who committed the robbery and the victim mistakenly identified Petitioner as the robber.

Notwithstanding the obvious potential for prejudice to the defendant, the court took no steps to develop facts related to the effect the extrinsic information had on the jury. The court did not ascertain either the identity of the investigating

juror who obtained the information from the cell phone, who among the remaining jurors was aware of what that juror had learned, or the degree to which the extrinsic and highly prejudicial information had upon some or all of the jurors. Much as we said in *Dillard,* individual *voir dire* of the jurors would have given the court insight into the degree to which the various members of the jury were touched by the misconduct of one of them and whether, ultimately, it was possible to have defendant's case be fairly decided. *See Jenkins,* 375 Md. at 331, 825 A.2d at 1035 ("[O]ne of the ways to protect a defendant's constitutional right to an impartial jury is to expose the existence of factors which could cause a juror to be biased or prejudiced through the process of *voir dire* examination."); *Wardlaw,* 185 Md.App. at 453, 971 A.2d at 339 (stating that it was error for the court not to have *voir dired* the jury, "because a specific inquiry into the thought processes of the jury was the only method of ascertaining whether the [extrinsic] information . . ., acquired through the juror's internet research, improperly and irreparably influenced the jury's deliberative process to the prejudice of [Wardlaw] or the State").

To be sure, there is no way of knowing whether further investigation would have supplied enough information to permit the court to remedy the juror's misconduct short of granting a mistrial. We are certain, though, that what the court opted to do in the present case fell short of what was necessary before the court could have properly exercised its discretion to *deny* the requested mistrial. Given the nature of the misconduct and the degree to which the extrinsic information obtained as a result could impair Petitioner's right to a fair trial by an impartial jury, the court could not reasonably rely simply on a general admonishment to the jurors that they must disregard the new, wrongly-obtained information. And the court's follow up question to the jury, as a group, whether anyone of them "is unable to comply with that instruction during deliberation?" was inadequate under the particular circumstances of this case to ensure that a mistrial was not warranted.

Nor are we persuaded to a contrary conclusion by the fact that the jury (or at least some of the jurors) demonstrated good faith by disclosing the juror's misconduct and seeking the court's advice about how to handle the matter. In circumstances like these, the good faith of the jurors alone is not enough to guarantee that those same jurors can put aside information, prejudicial to the defendant, that comes to their attention through improper means.

In sum, because a trial court's discretion to grant or deny a motion for mistrial can be properly exercised only when sufficient facts are known to the court, *Dillard*, 415 Md. at 461, 3 A.3d at 412, and the trial court in this case did not have sufficient facts, we hold that the court's denial of Petitioner's motion for a mistrial was an abuse of discretion. Accordingly, we reverse the ruling of the Court of Special Appeals and remand the case for a new trial.

**JUDGMENT OF THE COURT OF SPECIAL APPEALS REVERSED; CASE REMANDED TO THAT COURT WITH INSTRUCTIONS TO REVERSE THE JUDGMENTS OF CONVICTION AND REMAND THE CASE TO THE CIRCUIT COURT FOR A NEW TRIAL; COSTS IN THIS COURT AND IN THE COURT OF SPECIAL APPEALS TO BE PAID BY THE MAYOR AND CITY COUNCIL OF BALTIMORE CITY.**

MURPHY, J., dissents.

MURPHY, J., dissenting.

I agree with the majority that "a trial court's discretion when to grant or deny a motion for mistrial can be properly exercised only when sufficient facts are known to the court." I dissent, however, from the holding that the case at bar is one in which "the trial court's denial of Petitioner's motion for a mistrial was an abuse of discretion." In my opinion, the Circuit Court had a sufficient factual basis for concluding that, "Having polled the jury and not having a response, I don't find there's manifest necessity to declare a mistrial."

The record shows that, after instructing the jurors in open court that "you cannot use, directly or indirectly ... what, if anything, you saw and/or heard ... once you placed the battery in the phone and activated it," the Circuit Court asked the jurors four questions. The first three questions asked, "Does everybody understand [the instructions]?" The fourth question asked, "Now is there anyone who is unable to comply with that instruction during deliberation? Raise your hand." The record also shows that, when it returned its verdicts over four hours after deliberations resumed, the jury *acquitted* Petitioner of robbery with a dangerous weapon, first degree assault and the handgun charges relating to those offenses.

Because Petitioner's trial counsel never requested that the Circuit Court conduct an individual *voir dire* of each juror, I would hold that the Circuit Court's failure to do so was neither erroneous nor an unfairly prejudicial abuse of discretion, and would therefore affirm the judgment of the Court of Special Appeals.