McDONALD, J.,
dissenting, which BATTAGLIA and ADKINS, JJ., join, dissenting in part.
On behalf of the majority, Judge Harrell has done his usual thorough and thoughtful review of the case law in this area. However, I cannot agree with the Majority’s conclusion that the trial judge need not have conducted any further inquiry in this case.
*97 Here the trial judge received a note from the jury foreman reporting that a juror, who earlier in the deliberations had expressed a belief that the defendant was not guilty, had more recently stated an intention to change her vote for the sole purpose of going home sooner. While the Majority concedes that this note was “troublesome on its face,” it ultimately concludes that the note did not raise “the type of alarming factual issues” as two prior cases in which this Court held that it was an abuse of discretion for a trial court to deny a defense motion for a mistrial without conducting further investigation. Majority op. at 77-78, 85, 94 A.3d at 37, 42.
But what could be more alarming than that a juror, believing that a defendant is innocent, votes “guilty” simply in order to go home? Such misconduct would strike at the heart of the jury’s function. Neither of the two cases that the Majority distinguishes involved conduct so central to the decision-making process. Yet this Court held that further inquiry was mandatory in both instances.[1]
Perhaps the foreman misunderstood the juror. Perhaps the juror did not mean what she said, and in fact had not abandoned her oath to decide the case based on the evidence. Perhaps the trial judge’s instinct that the note was a product *98 of juror fatigue after a long day was correct. Had the judge conducted an inquiry, I would have accorded great deference to whatever conclusion she reached. But she did not do so. And so the trial judge had little more information than we do on which to assess whether there was juror misconduct or not.
Although the trial judge did not respond directly to the question posed by the foreman, hopefully the juror who allegedly made the statement — and whichever jurors heard her— understood that they were to base their verdict on the law and the evidence. However, the quick return of the jury verdict on Tuesday would be perfectly consistent with a juror voting “guilty” just to go home and a foreman who may have surmised, from the court’s inaction, that such a statement was of no moment.
We like to think that our juries approach their task like the one in Twelve Angry Men ultimately did — where an earnest examination of the evidence prevails over the desire for an early exit from a civic obligation, overcomes whatever prejudices and predispositions we individually bring to the jury room, and enables a jury to work toward a consensus that is a just result.[2] Perhaps that is how this jury worked, and I hope that is true. But, in my view, when a jury foreman reports that one of the jurors is ready to concede his or her vote for reasons unrelated to the evidence or the law, a trial judge should do more than simply hope that it is not true.
Judge BATTAGLIA and Judge ADKINS join this opinion.

. In Dillard v. State, 415 Md. 445, 451, 3 A.3d 403 (2010), during a chance encounter between two jurors and two law enforcement officers who had testified at the trial, the jurors patted one of the officers on the back and said “good job.” This Court held that, without further inquiry by the trial court, it was impossible to determine whether that contact was "sufficiently egregious” to create presumption of prejudice, and ordered a new trial. In Johnson v. State, 423 Md. 137, 31 A.3d 239 (2011), a juror was able, during deliberations, to turn on a cell phone that had been introduced into evidence and found that the phone corroborated a witness' testimony about the timing of a call made from that phone. The trial court instructed the jury that they should rely solely on evidence admitted during the trial and should ignore any information from the cell phone; it further ascertained that the jurors intended to follow that instruction. Nevertheless, this Court later reversed the defendant’s conviction on the ground that the trial court should have conducted further investigation into circumstances of the juror’s examination of the cell phone. In neither Dillard nor Johnson was there an allegation that a juror had expressed an intention to violate the juror’s oath.

. In the film Twelve Angry Men (Orion-Ñova Productions 1957, screenplay by Reginald Rose), a jury in a murder case takes a preliminary vote upon entering the jury room and finds itself to be 11-1 in favor of conviction. Through questioning by the lone hold-out, and the jurors’ prodding of one another that exposes their individual aspirations and predispositions, they eventually reach a consensus that the prosecution had not proven its case beyond a reasonable doubt. See Ellsworth, One Inspiring Jury, 101 Mich. L.Rev. 1387 (2003). Ironically, it has been noted that at least one aspect of the deliberation portrayed in the film might itself constitute juror misconduct. Id. at 1399 n. 4.