Mark Anthony HOLSOMBACH *v.* STATE of Arkansas

CR 06-550 246 S.W.3d 871

Supreme Court of Arkansas
Opinion delivered January 11, 2007

*Taylor Law Firm*, by: *W.H. Taylor* and *Stevan E. Vowell*, for appellant.

*Mike Beebe*, Att'y Gen., by: *Brad Newman*, Ass't Att'y Gen., for appellee.

Jɪᴍ Gᴜɴᴛᴇʀ, Justice. This appeal arises from an order convicting appellant, Mark Anthony Holsombach, of capital murder of Theodore (Ted) Throneberry, attempted capital murder of Arkansas State Trooper Charlie Edmonson, and kidnapping. For these convictions, appellant was sentenced to life imprisonment without parole, twenty-five years' imprisonment with an enhancement of ten years for the use of a firearm, and thirty years, respectively. Appellant brings his appeal and raises five allegations of error. We affirm.

Appellant was involved in a romantic relationship with Anne Throneberry, the wife of the victim. On February 28, 2004, Ted returned home from work and was attacked and killed by appellant and William Frazier. The victim was struck in the head with a large hammer, bound with duct tape, and held against his will. The victim was killed, his body was burned, and his remains were scattered on a farm road on his property. On March 7, 2004, the Van Buren County Sheriff's Office received information that the victim was missing. Police unsuccessfully attempted to contact the victim and his wife. An arrest warrant and a search warrant were issued, and on March 22, 2004, the Arkansas State Police encountered appellant and Frazier on appellant's property in

Allred while executing the search warrant. Shots were fired, and Officer Edmondson sustained a gunshot wound. Appellant, Anne Throneberry, and Frazier evaded capture for several days. Appellant and Throneberry were apprehended on April 2, 2004, and Frazier was later apprehended on April 3, 2004.

Following the shooting of Officer Edmondson, the State filed a felony information on March 22, 2004, docketed as CR2004-30, which charged appellant with the attempted capital murder of a law enforcement officer. On August 12, 2004, the State filed a felony information charging appellant with capital murder, a class Y felony and a violation of Ark. Code Ann. § 5-10-101(4) (Repl. 2006); kidnapping, a class Y felony and a violation of Ark. Code Ann. § 5-11-102 (Repl. 2006); and aggravated robbery, a class Y felony and a violation of Ark. Code Ann. § 5-12-103 (Repl. 2006). This case was docketed as CR2004-121. The State later filed an amended felony information on November 4, 2005, naming Ted Throneberry as the victim.

On September 2, 2004, appellant filed a motion to suppress his statement in which he claimed that the law enforcement officers' interrogation was illegal, that he was not properly advised of his *Miranda* rights, and that he did not knowingly, intelligently, or voluntarily waive his constitutional rights against self-incrimination. At issue were appellant's two statements given on April 2, 2004, and April 5, 2004. The suppression hearing was held on October 17, 2005, when the circuit court found that appellant was given his *Miranda* rights by acknowledging that he received his rights in both statements. The court ruled that the April 2, 2004, statement and a portion of the April 5, 2004, statement were admissible. Additionally, on November 30, 2004, the State filed a motion for joinder, requesting joinder of the three defendants and the offenses. Appellant responded on July 18, 2005. On October 17, 2005, the circuit court entered an order severing the co-defendants and joining the offenses against appellant in CR2004-30 and CR2004-121.

A jury trial was conducted on November 1, 2005, and appellant was convicted of capital murder, kidnapping, and attempted capital murder. He was sentenced to a term of life imprisonment, 360 months, and 300 months, respectively, for those offenses. An amended judgment and commitment order was filed on November 7, 2005. Appellant now brings his appeal.

On appeal, appellant argues that the circuit court erred in denying appellant's motion for directed verdict as to the kidnap-

ping charge. Specifically, appellant makes a corroboration argument, asserting that there is insufficient evidence to support the kidnapping conviction because the "only evidence in the record tending to connect the appellant to a kidnapping is the testimony of William Frazier." The State responds, arguing that the circuit court properly denied appellant's motion for directed verdict with respect to the offense of kidnapping because appellant's own statement to the police corroborated Frazier's testimony.

While the sufficiency-of-the-evidence challenge was not appellant's first point on appeal, due to double jeopardy concerns, we review this issue before reaching the other issues on appeal. *Brunson v. State*, 368 Ark. 313, 245 S.W.3d 132 (2006). On appeal, a motion for directed verdict is reviewed as a challenge to the sufficiency of the evidence. *Id.* We have repeatedly held that in reviewing a challenge to the sufficiency of the evidence, we view the evidence in a light most favorable to the State and consider only the evidence that supports the verdict. *Cluck v. State*, 365 Ark. 166, 226 S.W.3d 780 (2006). We affirm a conviction if substantial evidence exists to support it. *Id.* Substantial evidence is that which is of sufficient force and character that it will, with reasonable certainty, compel a conclusion one way or the other, without resorting to speculation or conjecture. *Id.*

Appellant was convicted of kidnapping, a violation of Ark. Code Ann. § 5-11-102(a)(3) (Repl. 2006), which provides in pertinent part:

> (a) A person commits the offense of kidnapping if, without consent, the person restrains another person so as to interfere substantially with the other person's liberty with the purpose of:
>
> . . . .
>
> (3) Facilitating the commission of any felony or flight after the felony[.]

*Id.*

Appellant and Frazier were accomplices to the kidnapping of Ted Throneberry. When two persons assist one another in the commission of a crime, each is an accomplice of the other and criminally liable for the conduct of both. *Tillman v. State*, 364 Ark. 143, 217 S.W.3d 773 (2005). Arkansas Code Annotated § 16-89-

111(e)(1)(A) (Supp. 2005) provides that a felony conviction cannot be based upon the testimony of an accomplice unless it is corroborated by other evidence tending to connect the defendant to the commission of the offense. The corroborating evidence need not be sufficient standing alone to sustain the conviction, but it must, independent from that of the accomplice, tend to a substantial degree to connect the defendant with the commission of the crime. *Rhodes v. State*, 276 Ark. 203, 634 S.W.2d 107 (1982). The corroborating evidence may be circumstantial so long as it is substantial; evidence that merely raises a suspicion of guilt is insufficient to corroborate an accomplice's testimony. *Gordon v. State*, 326 Ark. 90, 931 S.W.2d 91 (1996). The test is whether, if the testimony of the accomplice were completely eliminated from the case, the other evidence independently establishes the crime and tends to connect the accused with its commission. *Andrews v. State*, 344 Ark. 606, 42 S.W.3d 484 (2001).

We now turn to the present case to determine whether there was sufficient evidence to support appellant's kidnapping conviction. First, Frazier testified that appellant killed the victim, stating:

> [Appellant] stopped [Ted Throneberry] when he came through the door, put him down on the floor at gunpoint, took his wallet, took his boots off, his belt off, his knife off and his hat off and took his keys; put him down in a chair, tied him up and went out to his truck and he got his briefcase and his paychecks and came back in and was talking to him. . . . It went on for about a day and then he ended up telling Ted Throneberry that he was his judge, he was his juror, and he was his executioner and he wound up killing him.

Second, appellant's statement was introduced during the testimony of Officer Short, who testified that appellant stated that Frazier attacked Throneberry, knocked him into a wood pile in the wood room, taped him in a chair, and that the victim was "moaning" and "in a bad way" before he died. While there is a discrepancy as to which individual attacked the victim, both statements point to appellant's involvement in the victim's murder. We have said that there is no distinction in the criminal liability of accomplices. *Clark v. State*, 358 Ark. 469, 192 S.W.3d 248 (2004). Based upon this testimony, there was substantial evidence that appellant restrained the victim against his will during the commission of a felony, the victim's murder. *See* Ark. Code

Ann. § 5-11-102(a)(3). Therefore, we hold that there was sufficient evidence for the jury to convict appellant of kidnapping, and we affirm the jury's finding.

For his first point on appeal, appellant argues that the circuit court erred in denying his motion to suppress his statement. Specifically, appellant contends that his statement, "You'll furnish me a public defender," was an unequivocal request for an attorney. In response, the State argues that the circuit court properly denied appellant's motion to suppress his statement because he never unequivocally requested an attorney. The State asserts that appellant never demanded a lawyer and that his responses were likely a question in response to the reading of his *Miranda* rights.

Our standard of review for a trial court's decision to grant or deny a motion to suppress requires us to make an independent determination based on the totality of the circumstances, to review findings of historical facts for clear error, and to determine whether those facts give rise to reasonable suspicion or probable cause, while giving due weight to inferences drawn by the trial court. *George v. State*, 358 Ark. 269, 282-83, 189 S.W.3d 28, 36 (2004).

The issue is whether appellant made an unequivocal request for an attorney. The United States Supreme Court has made it clear that when invoking the *Miranda* right to counsel, the accused must be unambiguous and unequivocal. *Baker v. State*, 363 Ark. 339, 214 S.W.3d 239 (2005) (citing *Edwards v. Arizona*, 451 U.S. 477 (1981)). The Court stated:

> [I]f a suspect makes a reference to an attorney that is ambiguous or equivocal such that a reasonable officer in light of the circumstances would have understood only that the suspect might be invoking the right to counsel, our precedents do not require cessation of questioning.

*Higgins v. State*, 317 Ark. 555, 562, 879 S.W.2d 424, 427 (1994) (quoting *Davis v. United States*, 512 U.S. 452 (1994)). An equivocal request for counsel does not obligate the police to cease questioning and seek clarification, but interrogation may continue until the suspect clearly requests counsel. *Moore v. State*, 321 Ark. 249, 257, 903 S.W.2d 154, 157-58 (1995). In *Davis, supra*, the Supreme Court explained:

> Although a suspect need not 'speak with the discrimination of an Oxford don,' . . . he must articulate his desire to have counsel

present sufficiently clearly that a reasonable police officer in the circumstances would understand the statement to be a request for an attorney. If the statement fails to meet the requisite level of clarity, *Edwards* [*v. Arizona*] does not require that the officers stop questioning the suspect.

*Davis*, 512 U.S. at 459. In recognizing the balance between the necessity for law enforcement officers to gather information to assist in an investigation and the accused's constitutional right to counsel, the Court held:

> [I]f we were to require questioning to cease if a suspect makes a statement that might be a request for an attorney, . . . police officers would be forced to make difficult judgment calls about whether the suspect in fact wants a lawyer even though he hasn't said so, with the threat of suppression if they guess wrong. We therefore hold that, after a knowing and voluntary waiver of the *Miranda* rights, law enforcement officers may continue questioning until and unless the suspect clearly requests an attorney.

*Id.* at 461.

With this precedent in mind, we turn to the present case. At issue is appellant's statement made to Officer Bill Beach and Officer Dan Short on April 2, 2004, where appellant said, "You'll furnish me a public defender," during his interview with Officer Beach. We note that the transcript in the record contains little punctuation, so the issue is whether appellant asked a question (*i.e.*, "You'll furnish me a public defender?") or made an affirmative statement (*i.e.*, "You'll furnish me a public defender!").[1] The transcript reads:

BEACH: Talk about Bill [Frazier].

APPELLANT: You'll furnish me a public defender

BEACH: You understand, let me do this, you understand you have the right to talk to a lawyer for advice before we ask any questions and have him with you during questions

---

[1] We further note that the tape was not included in the record, nor was it introduced at trial. At trial, there was some discussion regarding the poor quality of the tape, and the transcript of the taped statement, rather than the tape itself, was admitted into evidence at trial.

APPELLANT: Yes that's right (I/A),[2] I really don't mean to be a smart ass

BEACH: I understand that's OK, this is just, all you have to do, do you understand if you cant afford a lawyer one will be appointed to for you before any questioning if you wish at no cost to you

APPELLANT: I . . . can't afford one, uh, can't afford one, I have been trying to get a lawyer for years to help me get my records straight now

BEACH: Do you understand that if you decide to answer questions now, (I/A) without a lawyer present you still have the right to stop answer at any time

APPELLANT: Yes sir I do

BEACH: You understand you have the right to stop answering anytime until you talk to an attorney

APPELLANT: Yes sir, I do

BEACH: Mark, just sign this form this paragraph entitled waiver of rights . . . I'm going to read to you what it says and we'll talk more about it, it says I've read this statement of my rights and I understand what my rights are I am willing to make a statement and answer questions I understand and know what I am doing no promises or threats have been made to me and no pressure or coercion of any kind have been used against me.

APPELLANT: Yeah

BEACH: You understand what that says . . .

APPELLANT: (I/A)

BEACH: What I am asking you to do is look at this form . . . just look it over make sure that's the same thing I told you

---

[2] I/A stands for inaudible.

APPELLANT: I cant read without my glasses . . .

BEACH: Wanna to use mine

APPELLANT: I cant hardly see . . . I got to have them close, (I/A)

BEACH: OK, if these are correct after here what I've written if you would just put your initials out there at the end of each one like that keeps anybody from adding anything after what you read . . . Ok if you understand your rights as I have (I/A) . . . On the form, down here on the (I/A) indicated, just sign your name, understand that is not an admission of anything other than the fact that I have read you your rights and you understand what they are. Regardless whether you sign this form or not you're still free to exercise any one of these rights at any time. OK

APPELLANT: Sigh, do I get a copy of those.

BEACH: If you want

APPELLANT: I would like that

At the suppression hearing on October 17, 2005, Officer Beach testified that he read the *Miranda* rights to appellant, and appellant initialed each response on a standard *Miranda* form. Officer Beach testified that appellant, after initialing the *Miranda* rights form, waived his rights and made a statement. He also testified on cross-examination that he did not recall in what context appellant's statement, "You'll furnish me a public defender," was said. Further, Officer Beach testified that there was not "anything [appellant] did not wish to talk about."

Officer Short testified that he "turned on the tape after the first couple of rights were read to him," and appellant appeared to understand his rights. During Officer Short's testimony, the following colloquy occurred:

Q: Were you present during the entire time Mr. Holsombach made a statement?

A: The statement?

Q: Well, I understand that the tape recording may not be entirely the whole statement, as he was reading the rights form?

A: Right. I turned the tape on after the first couple of rights were read to him. But I was there throughout the rest of the interview.

. . . .

Q: And did Mr. Holsombach appear to understand those rights that were before read to him during the time of the taking of the statement?

A: Yes, he understood what his rights were.

Q: Did he ever stop at any time ask for an attorney?

A: No, not that I know of.

Q: Did he ever say that he wanted to stop making any statement?

A: On the first statement [April 2nd statement], I don't believe he ever said he wanted to stop making a statement.

On cross-examination, Officer Short testified that he believed appellant never asked for an attorney. The circuit court found that appellant was given his *Miranda* rights and acknowledged that he received his rights by signing the *Miranda* form. The circuit court ruled that the statement was admissible.

 Here, the circuit court properly found that the statement was admissible for the following reasons. First, both officers believed that appellant never requested an attorney. Under *Davis, supra,* appellant's statement did not "meet the requisite level of clarity" of requesting an attorney, and questioning can continue until the accused unambiguously requests an attorney. Thus, the officers' continued questioning regarding appellant's *Miranda* rights was permissible under *Davis, supra,* as they attempted to clarify appellant's statement. Second, appellant signed the *Miranda* form, thereby waiving his rights. Officer Short testified that appellant understood those rights and never "wanted to stop

making a statement." Third, appellant's statement, "You'll furnish me a public defender," was an equivocal request for an attorney made in the middle of Officer Beach's recitation of the rights on the *Miranda* form. After being asked if he understood his right to talk to a lawyer, appellant replied, "Yes, that's right (I/A), I really don't mean to be a smart ass." This statement, which is viewed in light of the totality of the circumstances, including his signing the *Miranda* rights form, signifies that appellant merely repeated what the officer had just told him. Moreover, the circuit court gave weight to the police officers' testimony at the suppression hearing. We have said that we defer to the superior position of the trial court to pass upon the credibility of witnesses. *Davis v. State*, 351 Ark. 406, 94 S.W.3d 82 (2003). Based upon the foregoing reasons, we hold that the circuit court properly denied appellant's motion to suppress his statement.

For his second point on appeal, appellant argues that the circuit court erred in granting the State's motion to consolidate the offenses of capital murder, kidnapping, aggravated robbery, and attempted capital murder. Specifically, appellant contends that the State should not be allowed to join offenses that occurred "two or three weeks apart." In response, the State argues that the circuit court properly consolidated the offense of attempted capital murder with the other offenses. The State asserts that the charges arose "from a common scheme or plan to commit a murder, cover it up, and avoid apprehension and prosecution."

Joinder, consolidation, and severance of indictments for trial are procedural matters. *Owen v. State*, 263 Ark. 493, 500, 565 S.W.2d 607, 611-12 (1978). Arkansas Rule of Criminal Procedure 23.1 provides that two or more charges may be consolidated for trial, if the offense could have been joined in a single information. Under Ark. R. Crim. P. 21.1, two or more offenses may be joined in one information when they are based on the same conduct or on a series of acts connected together or constituting parts of a single scheme or plan. The court had the authority to consolidate the two informations, subject to appellant's right to move for a severance. *Owen, supra*. A defendant has an absolute right to a severance of offenses joined solely on the ground that they are of same or similar character. *Passley v. State*, 323 Ark. 301, 308, 915 S.W.2d 248, 251-52 (1996). Granting or refusing a severance is a matter within the discretion of the trial court. *Id.*

In the present case, the State in its motion for joinder argued that "the incidents resulting in the charges . . . [arose] from a common scheme or plan to commit the murder, cover up the murder, and avoid apprehension and prosecution of the crimes alleged." The State further asserted that both matters should be joined because they were a "part of a common scheme or plan," pursuant to Ark. R. Crim. P. 21.2(c). In response, appellant argued that the charge of attempted capital murder of the police officer was three weeks after the murder of Throneberry and that the latter act could not be a part of a common scheme or plan. On October 17, 2005, the circuit court entered an order that severed the co-defendants but joined the offenses charged against appellant in cases CR2004-30, the case involving the attempted capital murder of Officer Edmondson, and CR2004-121, the charges involving Throneberry.

We agree with the circuit court's ruling on this issue. Officer Edmondson was shot during a shootout between appellant and Frazier and Van Buren County law enforcement while police attempted to execute a search warrant in its investigation of the Throneberry murder. Appellant and Frazier participated in the murder, fled, armed themselves, and used those weapons in an attempt to evade capture as law enforcement closed in and tried to execute the search warrant. We have held that, when a series of acts are connected, the State has a right to join them in a single information. *E.g.*, *Ruiz v. State*, 273 Ark. 94, 99, 617 S.W.2d 6, 9, (1981). For these reasons, we affirm the circuit court's ruling on the State's motion to join the offenses.

For his third point on appeal, appellant argues that the circuit court erred when it failed to grant appellant's motion for mistrial based upon juror misconduct. Specifically, appellant contends that the circuit court should have granted his motion for mistrial after a prospective juror, Marsha McDonald, stated during voir dire that some members of the venire discussed the possible penalties if appellant were convicted.

We have made it clear that a mistrial is a drastic remedy and should be declared when there has been an error so prejudicial that justice cannot be served by continuing the trial, or when it cannot be cured by an instruction. *Smith v. State*, 354 Ark. 226, 118 S.W.3d 542 (2003). The trial court has wide discretion in granting or denying a motion for mistrial, and, absent an abuse of that discretion, the trial court's decision will not be disturbed on appeal. *Id.*

Following an allegation of juror misconduct, the moving party bears the burden of proving both the misconduct and that a reasonable possibility of prejudice resulted from it. *Henderson v. State*, 349 Ark. 701, 80 S.W.3d 374 (2001). We defer to the superior position of the trial court to evaluate the credibility of the witnesses and the prejudicial effect of the misconduct, if any. *Id.*; *Solomon v. State*, 323 Ark. 178, 913 S.W.2d 288 (1996). In *Howell v. State*, 220 Ark. 278, 247 S.W.2d 952 (1952), the appellant alleged error in the trial court's refusal to grant a mistrial because certain jurors read newspaper accounts of the trial's first day. We held that the trial court was correct in refusing to grant a mistrial because no prejudice was shown. Our holding was based primarily on the fact that the trial court, after learning of the juror misconduct, admonished the jury that a newspaper story is not evidence in a trial, and the jury is to base its verdict only on the evidence, proof, and testimony developed at trial. *Id.*

In the present case, the following colloquy occurred between the circuit court and prospective juror McDonald:

> Ms. McDONALD: I have some questions for you.
>
> THE COURT: All right. I am on voir dire now.
>
> Ms. McDONALD: Some of us have been talking out there and we would like to know, first of all, if this man is found innocent, we know that he will walk. Second of all, if he is found guilty, what are the options as far as a guilty verdict.
>
> THE COURT: Okay.
>
> Ms. McDONALD: And would we have a say in that at all?
>
> THE COURT: Yes. You would have a say, but I can't tell you what the options are because that has a lot to do with the decisions you all find. If you find he is not guilty, of course, there would be no penalty.
>
> Ms. McDONALD: Right.
>
> THE COURT: There are a number of different charges and a range of penalty in each one.
>
> Ms. McDONALD: Right. But this gentleman brought up, you know, the life in prison. We want to know if that is the only option, if this man is found guilty.

THE COURT: Okay.

MR. TAYLOR: Your Honor, could we go into session in chambers, the lawyers and the judge? I have an issue I would like to take up at this point.

THE COURT: Ms. McDonald, will you step back out just a minute?

MR. TAYLOR: Well, Judge, it appears that the jury panel has been talking among themselves as to the possible punishment that could be imposed prior to or what the resolution of this case may be prior to it being submitted to them, which is strictly in violation of your admonition to them. I need to consult with my co-counsel and my client and I may have a motion to make.

*In Camera Hearing*

THE COURT: All right. Ms. McDonald, one of the things that I told you all before we broke is that you are not to discuss the case with yourself or with anyone else. Sounds like to me you have been.

Ms. McDONALD: We were talking time limits.

THE COURT: Time limits?

Ms. McDONALD: As about how long the case could possibly take. That is going to be a problem for some people.

THE COURT: Well, you were talking to me about penalty.

Ms. McDONALD: That is what I was wondering, yeah, because he said that in front of me.

THE COURT: Is there something that you are asking me, or is that something that you all were discussing out there.

Ms. McDONALD: That was something I did voice a few minutes ago. I wondered if there were other options because of what he had said to all of us.

THE COURT: You said that to the other panel members?

Ms. McDONALD: Not necessarily all of them, just anyone that could hear around us.

THE COURT: Was there a discussion?

Ms. McDONALD: No.

THE COURT: Did anyone respond back?

Ms. McDONALD: Not that I remember.

At this point, appellant moved for a mistrial, and the circuit court stated that it would hold the motion in abeyance until it had the opportunity to question each of the prospective jurors individually to determine if they had discussed the case with McDonald. Some jurors had heard a discussion about possible penalties in the case, but they could not recall who initiated the discussion. After questioning those jurors, the circuit court denied appellant's motion for mistrial, making the following ruling:

THE COURT: They were not to be back until 3:30. At this point, I am not going to deny your request but I am not going to grant it either because the testimony that we have had from the jurors is that no one outside of the box really heard what they were talking about. Now, after we get through with this group, I will grant your motion [to poll the other five jurors], bring them in and individually question them regarding any discussion they may have had.

The circuit court questioned those jurors who had been selected prior to the voir dire of McDonald, but those jurors had not heard any discussion about the case. Appellant made a second motion for mistrial, which the circuit court denied. As the basis of its denial, the court ruled that two jurors who heard McDonald's comment were excused, and another juror who possibly heard the comment was not involved in the discussion.

Here, it cannot be said that the misconduct of McDonald prejudiced appellant. *See Henderson, supra.* The circuit court correctly determined that McDonald's statements were heard by two jurors who were later excused, and the court

individually polled the remaining jurors, who could not recall who initiated the statement. More importantly, McDonald, the juror in question, was excused from the venire. Absent appellant pointing to an individual remaining juror, we cannot find any prejudice, and accordingly, we hold that the circuit court did not err in its ruling.

For his fourth point on appeal, appellant argues that the circuit court erred when it instructed the jury on accomplice liability with AMI Criminal 401. Specifically, appellant contends that the circuit court's instruction on accomplice liability was in direct contravention of the criminal information filed by the State. Appellant asserts that an amended felony information should have been filed to reflect appellant's accomplice status. The State responds, arguing that the circuit court did not err by instructing the jury on accomplice liability. Specifically, the State contends that it is not required to allege accomplice status in a felony information.

We have stated that a party is entitled to a jury instruction when it is a correct statement of the law and when there is some basis in the evidence to support giving the instruction. *Vidos v. State*, 367 Ark. 296, 239 S.W.3d 467 (2006). We will not reverse a trial court's decision to give an instruction unless the court abused its discretion. *Id.*

An information is not defective if it sufficiently apprises the defendant of the specific crime with which he is charged to the extent necessary to enable him to prepare a defense. *Purifoy v. State*, 307 Ark. 482, 489, 822 S.W.2d 374, 378 (1991). Further, we have held that there is no distinction between principals and accomplices for purposes of establishing criminal liability. *Id.*

In the present case, appellant argues that the felony information alleged that he "was acting alone and individually" in committing the crimes. However, appellant's argument is misplaced. Neither the felony information, filed August 15, 2004, nor the amended felony information, filed November 4, 2005, contain that phrase. Moreover, appellant knew, as he pointed out in his brief regarding the joinder issue, that he was an accomplice to Frazier and Anne Throneberry. Thus, for these reasons, we hold that the allegations contained in the information were sufficient to apprise appellant of the crimes with which he was charged, and we affirm the circuit court's instructing the jury on accomplice liability.

Further, in compliance with Ark. Sup. Ct. R. 4-3(h), the record has been examined for all objections, motions and requests made by either party that were decided adversely to appellant, and no prejudicial error has been found. *Winston v. State*, 368 Ark. 105, 243 S.W.3d 304 (2006).

Affirmed.

DANIELSON, J., not participating.