ROBIN F. WYNNE, Associate Justice
Elliott Harold Finch, Jr., was found guilty by a Pulaski County jury of aggravated residential burglary, aggravated assault on a family or household member, and first-degree terroristic threatening. An enhancement for use of a firearm was applied pursuant to Arkansas Code Annotated section 16-90-120 (Repl. 2016), and appellant was sentenced as a habitual offender under Arkansas Code Annotated section 5-4-501 (Repl. 2013).[1] Appellant received a sentence of life imprisonment plus fifteen years in the Arkansas Department of Correction, plus a $10,000 fine. On appeal, he argues that the circuit court erred by denying his requests to represent himself at trial and abused its discretion by denying his motion for mistrial *145 based on a juror, during guilt-innocence phase deliberations, looking up something with his cell phone and sharing that information with other jurors. We affirm.
Appellant was charged with kidnapping, aggravated residential burglary, possession of firearms by certain persons,[2] aggravated assault on a family or household member, and first-degree terroristic threatening for events that took place at his former girlfriend's residence in Jacksonville on August 22 and 23, 2013. At trial in November 2016, Roshandra Nwozuzu (formerly Wesley) testified that appellant is her former boyfriend and had lived with her and her two children. On August 4, 2013, after an incident in which he held a boxcutter to her neck, appellant was given a trespass warning by the Jacksonville Police Department, advising him to stay off Ms. Nwozuzu's property. On the night of August 22, Ms. Nwozuzu returned home with her children and went to her master bathroom to shower. When she exited the shower, appellant was pointing a gun at her. Ms. Nwozuzu testified that appellant threatened to kill her, her children, and himself if she screamed, and she spent the next several hours trying to calm him. Early the next morning, she was able to convince him to let her leave for work. She took her nine-year-old daughter with her but was unable to wake up her teenage son, who was taking medication that made him sleep deeply. After leaving the house, Ms. Nwozuzu immediately called the police and met officers at a nearby park. The special-response team was able to use Ms. Nwozuzu's key to get into her residence and get her son out before alerting appellant to their presence. Appellant came out of the master bedroom and was placed under arrest. The State presented the testimony of officers who found a gun and a magazine under the bed in the master bedroom and a broken window. Ms. Nwozuzu's son, Rashaad Nelson, also testified at trial.
The jury was unable to reach a verdict on kidnapping, and the court declared a mistrial on that charge. The jury found appellant guilty of aggravated residential burglary, aggravated assault on a family or household member, and first-degree terroristic threatening. They further found that he had employed a firearm to commit each of these three felony offenses. As noted above, appellant received an aggregate sentence of life plus fifteen years' imprisonment, as well as a fine. This appeal followed.
I. Self-Representation
For his first point on appeal, appellant argues that the circuit court erred in denying his requests to represent himself at trial. The right of a criminal defendant, pursuant to the Sixth Amendment to the United States Constitution, to represent himself at trial was recognized by the Supreme Court of the United States in Faretta v. California , 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975). Article 2, section 10 of the Arkansas Constitution provides that an accused in a criminal prosecution has the right "to be heard by himself and his counsel." This court has recognized that the constitutional right to counsel is a personal right and may be waived at the pretrial stage or at trial. Pierce v. State , 362 Ark. 491, 497, 209 S.W.3d 364, 368 (2005).
A defendant may waive the right to counsel and invoke his right to defend himself pro se provided that (1) the request to waive the right to counsel is unequivocal and timely asserted, (2) there has been a knowing and intelligent waiver of the right to counsel, and (3) the defendant has not engaged in conduct *146 that would prevent the fair and orderly exposition of the issues. Id. (citing Mayo v. State , 336 Ark. 275, 280, 984 S.W.2d 801, 804 (1999) ). Determining whether an intelligent waiver of the right to counsel has been made depends in each case on the particular facts and circumstances, including the background, the experience, and the conduct of the accused. Collins v. State , 338 Ark. 1, 6, 991 S.W.2d 541, 544 (1999). Every reasonable presumption must be indulged against the waiver of fundamental constitutional rights. Id.
Here, appellant asserts that he made two timely and unequivocal requests to represent himself at trial. Reviewing the record as a whole, it is clear that appellant was dissatisfied with his appointed counsel. What is less clear is whether he made an unequivocal waiver of his right to counsel or whether he had engaged in tactics that would prevent the fair and orderly exposition of the issues. Appellant began asking for the appointment of new counsel as far back as September 22, 2015. Appellant first made a request to represent himself at trial at a hearing on October 19, 2015. In this hearing, appellant repeatedly stated that he did not want his current attorney to represent him. While he interspersed his complaints about his attorney with the statement that he wanted to represent himself, he also showed himself to be unwilling or unable to stop talking over other people, including the judge. And perhaps most importantly, the court ordered a mental evaluation at the state hospital at this hearing to determine appellant's fitness to proceed. This court has held that a trial court cannot determine whether a waiver of counsel is knowingly and intelligently made when an examination of a defendant's competency to stand trial had not yet been made. Mayo v. State , 336 Ark. 275, 283, 984 S.W.2d 801, 806 (1999).
Appellant alleges that at a pretrial hearing on March 10, 2016, he again unequivocally asked to represent himself.[3] This hearing followed a second mental evaluation at which appellant again refused to cooperate on the portion of the examination regarding his mental state at the time of the alleged offenses, despite this evaluation being done at appellant's request and under the circuit court's admonition to cooperate. During this same time, appellant continued to file various pro se motions in which he attempted to get the charges against him dismissed for violation of speedy trial. At the March hearing, appellant again showed himself to be disruptive.
We recognize that the circuit court's inquiry included irrelevant concerns, such as appellant's level of education and technical legal knowledge, and the court's stated basis for denying the request-"the seriousness of the offenses and the likelihood of [appellant] getting some serious time"-was invalid. However, on this record we must conclude that appellant's request was not unequivocal and that the trial court could have concluded that appellant had "engaged in conduct that would prevent the fair and orderly exposition of the issues." Based on the above, we affirm on this point.
II. Motion for Mistrial Based on Juror Misconduct
For his second point on appeal, appellant argues that the circuit court abused its discretion by denying his motion for mistrial made after it was discovered, during the guilt-innocence-phase deliberations, that a juror had used his cell phone to look *147 up something, and had shared that information with the other jurors. He argues on appeal that it was an abuse of discretion for the circuit court to deny his motion for mistrial without giving him the opportunity to question the jurors under oath about the extraneous information. In response, the State argues that the circuit court did not abuse its discretion in denying the motion for mistrial because appellant sought to question the jurors about what was discussed during deliberations, which would have violated Ark. R. Evid. 606, and "juror misconduct is appropriately investigated by the court on a motion for new trial." The State further contends that appellant failed to meet his burden of proof to show a reasonable probability of prejudice because he did not call any witnesses or present further evidence and that a juror looking up the definition of "hung jury" does not demonstrate a reasonable possibility of prejudice.
We begin by recognizing that a defendant's Sixth Amendment right to a fair trial before an impartial jury is a fundamental element of due process. Elmore v. State , 355 Ark. 620, 623, 144 S.W.3d 278, 280 (2004) (citations omitted). Implicit in the right to an impartial jury trial is the right to have the jury's verdict be "based solely on the evidence presented in the case." Johnson v. State , 423 Md. 137, 31 A.3d 239, 246 (2011) (citing Couser v. State , 282 Md. 125, 383 A.2d 389, 397 (1978) ; accord Turner v. Louisiana , 379 U.S. 466, 472-73, 85 S.Ct. 546, 13 L.Ed.2d 424 (1965) ("[T]he 'evidence developed' against a defendant shall come from the witness stand in a public courtroom where there is full judicial protection of the defendant's right of confrontation, of cross-examination, and of counsel."); Patterson v. Colorado , 205 U.S. 454, 462, 27 S.Ct. 556, 51 L.Ed. 879 (1907) ("The theory of our system is that the conclusions to be reached in a case will be induced only by evidence and argument in open court, and not by any outside influence, whether of private talk or public print").)
We have made it clear that a mistrial is a drastic remedy and should be declared when there has been an error so prejudicial that justice cannot be served by continuing the trial, or when it cannot be cured by an instruction. Holsombach v. State , 368 Ark. 415, 246 S.W.3d 871 (2007). The trial court has wide discretion in granting or denying a motion for mistrial, and absent an abuse of that discretion, the trial court's decision will not be disturbed on appeal. Id. Following an allegation of juror misconduct, the moving party bears the burden of proving both the misconduct and that a reasonable possibility of prejudice resulted from it. Id. We defer to the superior position of the trial court to evaluate the credibility of the witnesses and the prejudicial effect of the misconduct, if any. Id.
Here, around the time the court received a note from the jury asking, "If we do not all agree on guilty or not guilty on the first page, how do we handle this?" the court was alerted to the possibility that Juror 4 had looked something up on his cell phone. The court informed counsel, called that juror into the courtroom, swore him in, and asked whether he had used his cell phone to look up something that he did not understand. The juror testified that he had, in fact, looked something up, that he had done so "before [he] had even thought about it" in spite of the court's instructions,[4] and that he had shared that information with the other jurors. Defense *148 counsel moved for a mistrial and also asked to voir dire the jury to find out what Juror 4 had told them. After hearing lengthy arguments regarding how to proceed, the trial court ultimately removed Juror 4, replaced him with an alternate juror, and allowed deliberations to continue. The court appeared to believe that it was constrained by Arkansas Rule of Evidence 606(b) from asking any questions other than what it had asked Juror 4. No curative instruction was requested or given.
After trial, appellant filed a motion for new trial in which he argued that the jury committed misconduct by considering outside information, regardless of what information Juror 4 looked up; that the split verdict (hung on kidnapping and guilty on the other charges) showed a reasonable probability that the outside information influenced a juror's vote; and that the court violated his right to substantive due process by denying his motion for mistrial without allowing him an opportunity to show prejudice by asking the jurors what extraneous information they learned. The State responded that the motion should be denied because it failed to provide any new information for the court to consider and because there was no evidence that the extraneous information created a reasonable probability-not a mere possibility-of prejudice. The court held a hearing, and after considering the arguments of counsel, denied the motion for new trial. Appellant later filed an amended motion for new trial, this time attaching an affidavit of defense attorney Andrew Thornton stating that he had contacted Juror 4 and discovered that he had looked up the definition of "hung jury" during deliberations at appellant's trial. He told Thornton that he was "pretty sure" the definition was "[i]f the jury is not unanimous or is a majority, the judge sends them back for more deliberations, and if no consensus is made, there's a mistrial." The juror did not wish to talk further about the case or sign an affidavit. The trial court entered an order treating the amended motion for new trial as one for reconsideration and denying it.
Arkansas Rule of Evidence 606, Competency of Juror as Witness, provides in pertinent part as follows:
(b) Inquiry into Validity of Verdict or Indictment. Upon an inquiry into the validity of a verdict or indictment, a juror may not testify as to any matter or statement occurring during the course of the jury's deliberations or to the effect of anything upon his or any other juror's mind or emotions as influencing him to assent to or dissent from the verdict or indictment or concerning his mental processes in connection therewith, nor may his affidavit or evidence of any statement by him concerning a matter about which he would be precluded from testifying be received, but a juror may testify on the questions whether extraneous prejudicial information was improperly brought to the jury's attention or whether any outside influence was improperly brought to bear upon any juror.
The purpose of this rule is to balance the freedom of secret jury deliberations with the ability to correct an irregularity in those deliberations. Davis v. State , 330 Ark. 501, 511, 956 S.W.2d 163, 168 (1997). We do not read the language of Rule 606(b) to preclude the questioning of Juror 4 as to what he had researched on his cell phone and shared with the other jurors. Rather, "a juror may testify on the question[ ] whether extraneous prejudicial information was improperly brought to the jury's attention," and what that information consisted of is an integral part of the testimony and is necessary for deciding whether a reasonable possibility of prejudice exists. In short, there is nothing in *149 either Rule 606(b) or any precedent of which we are aware that would have prevented the circuit court from undertaking a reasonable inquiry into the nature of the extraneous information when it was brought to the court's attention during deliberations.
We are troubled by the trial court's denial of the motion for mistrial without a proper inquiry into the extrinsic information presented to the jury by Juror 4, but we conclude that there was no reasonable probability of prejudice to appellant in this particular case. A definition of the term "hung jury" is unlikely to result in prejudice to appellant, particularly in this case where the jury was, in fact, hung on the first count, kidnapping, and appellant received a mistrial on that charge. The definition of "hung jury" did not concern appellant's claim of innocence or the degree of his guilt. Researching the factual history of the case or even the definition of a term included in the elements of an offense would be much more likely to be prejudicial. In Franks v. State , 306 Ark. 75, 811 S.W.2d 301 (1991), the jurors used a dictionary to look up the definition of "premeditation." This court affirmed the denial of Franks's motion for new trial, writing: "While we agree that, generally, it is misconduct for a jury to seek out reading material without the knowledge of the court and the parties, prejudice does not occur in every case." Furthermore, this court has observed that a defendant is entitled to a fair trial, not a perfect trial. State v. Cherry , 341 Ark. 924, 931, 20 S.W.3d 354, 358 (2000). We hold that appellant could not show a reasonable possibility of prejudice in this case, and we therefore affirm on this point.
III. Rule 4-3(i)
In compliance with Arkansas Supreme Court Rule 4-3(i), the record has been examined for all objections, motions, and requests made by either party that were decided adversely to appellant, and no prejudicial error has been found.
Affirmed.
Baker, J., concurs.
Hart, J., dissents.
Josephine Linker Hart, Justice, dissenting.
The majority is correct when it states that the circuit court erred in its handling of Mr. Finch's assertion of his right to represent himself and in its handling of the juror misconduct situation. However, the majority errs when it fails to order a new trial. Mr. Finch was denied the trial that he was guaranteed under the Sixth Amendment to the United States Constitution and article 2, section 10 of the Arkansas Constitution. In affirming this case, the majority makes errors of fact and law with regard to Mr. Finch's right to represent himself. Likewise, the majority completely ignores our jurisprudence with regard to juror misconduct that consists of accessing the internet with a mobile phone during deliberations. Mr. Finch deserves a new trial.
Contrary to the majority's assurances, its rationale for affirming the circuit court's denial of Mr. Finch's right to discharge his appointed counsel and represent himself is not supported by the record. The majority's assertion that Mr. Finch's request "was not unequivocal" is belied by the fact that Mr. Finch's request to represent himself was made both orally and in writing.
I am troubled by the majority's confession that it is unable to "conclude" that Mr. Finch's request to represent himself was "unequivocal." The record reflects that Mr. Finch voiced the simple declaratory sentence, "I want to represent myself," no *150 fewer than three times in the October 19, 2015 hearing. Further, on February 25, 2016, Mr. Finch filed a written motion styled "Motion to Waive Counsel and Proceed Pro Se." That motion was heard and ruled on at a March 10, 2016 hearing. The circuit court obviously found Mr. Finch's "request" unequivocal enough to rule on it on October 19, 2015 and on March 10, 2016. Moreover, contrary to what the State now argues on appeal, Mr. Finch's attempt to exercise his right to waive counsel and represent himself was sufficiently unequivocal to induce the deputy prosecuting attorney to attempt, however incompetently, to lead the circuit judge through an inquiry that would comport with Faretta v. California , 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975).
Even with the State's "help," the circuit judge failed to honor the Faretta mandate, or the requirements that this court has imposed on circuit judges to ensure that a criminal defendant's waiver of counsel is voluntary and knowing. Faretta requires of a court in which a criminal defendant who wishes to waive assistance of counsel that the court ensure a defendant is "literate, competent, and understanding," that the defendant's waiver of counsel be voluntarily exercised as a product of "informed free will," and that the defendant be informed of the pitfalls of self-representation, specifically that the defendant "would be required to follow all the 'ground rules' of trial procedure." 422 U.S. at 836, 95 S.Ct. 2525. On the pivotal issue of whether a waiver of counsel is knowing and voluntary, the Arkansas Supreme Court requires a circuit judge to provide a criminal defendant who wishes to represent himself with four bits of information: (1) that the defendant is entitled to an attorney; (2) that the defendant have an attorney represent him at trial even if he cannot afford one; (3) the advantages of being represented at trial by an attorney; and (4) the drawbacks of not being represented by an attorney. Bledsoe v. State , 337 Ark. 403, 989 S.W.2d 510 (1999).
It is more than telling that the majority concedes that the circuit judge's questioning of Mr. Finch included "irrelevant" questions and focused on "invalid" considerations. Logically, the majority's analysis should have led to the conclusion that the circuit judge committed reversible error. Instead, the majority reinvented the facts in this case. The transcript speaks for itself, and it is reproduced here so that it may do so.
At the omnibus hearing on October 19, 2015, Finch told the circuit court:
FINCH : Your Honor, I don't want him as my attorney. It's been a conflict. Me and him had no communication at all. He ain't done nothing for me at all.
JUDGE : Mr. Finch-
FINCH : He lie-lie-been lying to me.
JUDGE : Mr. Finch to you have attorney-any witnesses that you need to call for this trial?
FINCH : I don't want him as my attorney.
JUDGE : That's not my question.
FINCH : That's all I'm going to say.
JUDGE : So you have no witnesses. The trial is set. You have-what's the-
FINCH : I want to represent myself, then.
JUDGE : Mr. Finch you-
FINCH : I don't want him-I don't want him as counsel.
Defense Counsel: I-
Finch: I don't want him as counsel.
JUDGE : Okay, one person can talk at a time. Mr. Finch?
FINCH : Well I-
JUDGE : And at this time-
FINCH : Can I speak then?
*151 JUDGE : No [defense counsel] was speaking. You'll have to wait until he's through.
DEFENSE COUNSEL : Yeah, he's-
JUDGE : [defense counsel]
DEFENSE COUNSEL : He's indicated to me before that he does not have any witnesses. And I wanted to make that clear.
JUDGE : Okay.
FINCH : I didn't tell him that. That's a lie.
JUDGE : Okay Mr. Finch, do you have witnesses in this case?
FINCH : Yeah, I told him back there.
JUDGE : Okay, who are the wit-
FINCH : I talked to him.
JUDGE : Who are-who are the witness that you-
FINCH : I don't want him as my counsel.
JUDGE : That's not my question.
FINCH : I want to represent myself.
JUDGE : Mr. Finch, who are the witnesses-
FINCH : I want to represent myself. And that's all I'm telling you.
JUDGE : Okay All right.
FINCH : I don't want him as my counsel.
JUDGE : [Defense counsel]-
FINCH : Take it how you want to, y'all. Because he-he-
JUDGE : Mr. Finch-
FINCH : -he's sitting up here and lied to me.
JUDGE : Hey, I'm trying to talk to you and you sitting there and just keep over talking me. Listen. Listen. Even if Mr.-if I remove [defense counsel], you got to tell the State who your witnesses are. So do you have witnesses for this case? Do you have witnesses for this-
FINCH : No, I don't have no witness.
JUDGE : Okay. You don't have any witnesses.
FINCH : Don't want no witnesses. I don't want no attorney.
JUDGE : Now-okay. Do you-what grade did you finish in high school? What grade did you finish in high school?
FINCH : I got a GED, your honor.
JUDGE : Okay. GED, okay. What year did you get that?
FINCH : Like ' 99.
JUDGE : Okay. And have you ever been in the system before?
FINCH : Yeah, I been through the system.
JUDGE : You understand the charges against you?
FINCH : Yeah, I understand the charges.
JUDGE : What are the charges against you?
FINCH : He ain't even told me the-
JUDGE : And let-
FINCH : -Punishment, the range, the-the time it carry.
JUDGE : What are the charges against you? See, I'm-I'm going to-I'm going to get a report on act 3 if you don't-if you don't follow-I'm trying to talk-
FINCH : Get your report, like I said.
JUDGE : I'm trying to talk to you.
FINCH : This man-this man been lying to me.
JUDGE : Mr. Finch, you said you-
FINCH : I'm not going to fool with this no more.
JUDGE : I have to go through a process if you want me to repre-if you want to represent yourself, but you won't let me finish.
FINCH : That's act 3. We'll request another act 3 then.
*152 BAILIFF : All right. Let's go.
JUDGE : All right. He's already had one?
DEFENSE COUNSEL : Yes.
FINCH : We're going to request another act 3 then.
JUDGE : All right. That's-I understand.
FINCH : I don't want him as counsel.
JUDGE : I'm not going to let him-
FINCH : This man-
JUDGE : -represent himself.
FINCH : This man voluntary lie to me.
JUDGE : So we'll go ahead and set it for trial. It's set for trial. So it's general now?
DEFENSE COUNSEL : Yes, general now.
JUDGE : All right.
DEFENSE COUNSEL : No motions. Just-except for the motion on the-on Count 3-
JUDGE : All right.
DEFENSE COUNSEL : -being severed.
JUDGE : Okay. All right then.
DEPUTY PROSECUTING ATTORNEY : Anything I get throughout trial prep, I'll be sure to hand over to [defense counsel].
JUDGE : Yes.
DEFENSE COUNSEL : Is State amending the felony information?
DEPUTY PROSECUTING: ATTORNEY : Your honor, we will be amending the felony information. I mentioned this on the record last time because of the defendant's criminal history, we believe that the habitual allegation can actually be increased to two strikes.
JUDGE : All right. And I understand that. And just for the record, Mr. Finch, your motion to represent yourself is denied based on the history that we've had with report from act 3 and all that. So the court is going to deny your motion. So we'll be set for trial. All right.
On February 25, 2016, Mr. Finch filed a written motion styled "Motion to Waive Counsel and Proceed Pro Se." At a March 10, 2016 hearing, the circuit court took up that motion.
JUDGE : All right. And so do you understand the process of trying this matter?
FINCH : Yes sir.
JUDGE : You understand these charges are three strikes?
FINCH : Yes, sir.
JUDGE : What does that mean?
FINCH : It's already been explained to me-
JUDGE : No, I'm asking-
FINCH : -by [my lawyer]
JUDGE : -you what does it mean
FINCH : It's an enhancement.
JUDGE : And what does that mean-
FINCH : Dealing with my previous convictions.
JUDGE : And what will it do for you if you're found guilty?
FINCH : Enhance my charges, the sentence guideline.
JUDGE : And how will it enhance your sentence? You don't know, do you?
FINCH : Depend what type of felony it's involving.
JUDGE : Well, no. You don't know do you?
FINCH : Yes, I know.
JUDGE : Well, tell me. I have to know that you know because I can't let you repre-
FINCH : It will be additional time.
JUDGE : How much additional time?
FINCH : What felony are you referring to?
JUDGE : I'm-no, the felony that you have. It's a-any felony.
*153 FINCH : He is going to enhance it, the number of years I can receive on it-
JUDGE : Well, I-
FINCH : -on the felony.
JUDGE : How will it enhance the number of years?
FINCH : The years I receive.
JUDGE : No. I'm asking you about the three-strike provision. You have three violent-you have two prior violent offenses. This is a violent offense. If you're found guilty, what will it do for your sentence?
FINCH : Well, some of the charge-it's no less than life. If I'm convicted of a Y-felony, it's no less than life. And-
JUDGE : Okay. Well I understand that. But if you get years, how much would you have to do?
FINCH : All of it. I'd be doing 100 percent on it.
JUDGE : You'd be doing 100-you understand that?
FINCH : Yeah.
JUDGE : So if you get ten years, you know you're doing ten years?
FINCH : I'm going to do ten years.
JUDGE : Okay. And you understand-you're willing to risk your own for that?
FINCH : yeah, rather than-yeah.
JUDGE : Is that a yes or no?
FINCH : It's a yes.
JUDGE : State have you anything you want to ask regarding self-representation but nothing else?
DEPUTY PROSECUTING ATTORNEY : Your Honor, we would ask about understanding of the rules of evidence and rules of criminal procedure.
JUDGE : You understand those, the rules of procedure-
FINCH : Yes.
JUDGE : Okay.
DEPUTY PROSECUTING ATTORNEY : And that if Mr. Finch was to represent himself, he would be bound by the same rules as the State.
JUDGE : Oh, he understands that. There's not going to be any-
DEPUTY PROSECUTING ATTORNEY : Your Honor, I just want to make sure it's clear on the record.
JUDGE : I understand.
FINCH : Also, Your Honor, if the Court would, I would like stand-by counsel, though, just stand-by.
JUDGE : For what? You didn't want-
FINCH : I'm just asking.
JUDGE : No, you don't want counsel. You want somebody to put on a show for you and that's not going to happen.
FINCH : I don't-I don't need-
JUDGE : No, now listen.
FINCH : I don't need no one to put on a show for me.
JUDGE : Mr. Finch. Mr. Finch, I'm talking.
FINCH : I done been in here numerous, numerous times.
JUDGE : You have counsel.
FINCH : Counsel ain't done nothing for me.
JUDGE : [Defense counsel] do you feel like that you can represent Mr. Finch?
DEFENSE COUNSEL : Yes.
FINCH : I'm asking-
JUDGE : All right. Your request to be-to self-represent yourself is going to be denied based on the seriousness of the offense and the likelihood of your getting some serious time, the Court's going to deny that request.
Based on this record, I am mindful that Mr. Finch, on occasion talked over his appointed counsel and the circuit judge.
*154 However, this breach of decorum occurred only when Mr. Finch was being ignored by the circuit judge as he attempted to raise the most important matter pending before the circuit court at the time-who would represent him. This was a threshold matter that had to be resolved before other matters because all of the trial strategy necessarily flowed from that key determination. Moreover, talking over another person present was exhibited frequently by the circuit judge and by Mr. Finch's appointed counsel. Significantly, Mr. Finch was respectful-he called the circuit judge "sir" and "Your Honor." Mr. Finch was also responsive to the circuit judge's questions, even though they were, as the majority notes, "irrelevant." Accordingly, the majority's "finding" that the circuit court "could have concluded" that Mr. Finch's self-representation would prevent the fair and orderly exposition of the issues is not only improper fact-finding but also unsupported by the record.
Likewise, the majority errs in its handling of the juror-misconduct issue. The majority professes to be "troubled" that the circuit judge denied Mr. Finch's mistrial motion "without a proper inquiry." I share the majority's concern. However, what troubles me more is the majority's failure to even acknowledge the primary case relied on by Mr. Finch, Dimas-Martinez v. State , 2011 Ark. 515, 385 S.W.3d 238. In my view, Dimas-Martinez is on point and must be either followed or overruled.
In Dimas-Martinez , this court held that it is reversible error for a juror to use a cell phone in the juror room to access the internet. While the focus in Dimas-Martinez was on a juror who disregarded instructions of the court and was tweeting in the jury room, two principles translate to the case before us.
First, it is reversible error when the circuit court does not address the misconduct of juror who was discovered to have disregarded the court's instructions regarding its prohibition of the use of electronic devices during jury service. The Dimas-Martinez court stated, "This is simply unacceptable, and the circuit court's failure to acknowledge this juror's inability to follow the court's directions was an abuse of discretion." In the case before us, it is noteworthy that the circuit judge's rationale for not conducting a proper inquiry was that he thought he might want to sanction the juror for disregarding his instructions.
Second, any access of the internet in the jury room constitutes jury misconduct regardless of demonstrated prejudice. The Dimas-Martinez court stated:
Finally, we take this opportunity to recognize the wide array of possible juror misconduct that might result when jurors have unrestricted access to their mobile phones during a trial. Most mobile phones now allow instant access to a myriad of information. Not only can jurors access Facebook, Twitter, or other social media sites, but they can also access news sites that might have information about a case. There is also the possibility that a juror could conduct research about many aspects of a case.
2011 Ark. 515, at 17, 385 S.W.3d at 249. The Dimas-Martinez court's fears have proven well founded in the case before us, as the offending juror was allegedly conducting research.
Stare decisis must be scrupulously followed. Unless we follow this doctrine, this court ceases to be an instrument of the rule of law and instead becomes a mere oligarchy. I would reverse and remand this case on both points.
I dissent.

Specifically, he was sentenced as a habitual offender with two or more enumerated felonies involving violence under Arkansas Code Annotated section 5-4-501(d) for the aggravated residential-burglary conviction (Class Y felony), resulting in an automatic sentence of life imprisonment, and as a habitual offender with four or more prior felony convictions under section 5-4-501(b) for his other two convictions (a term of imprisonment of not more than fifteen years for a Class D felony).

This charge was severed before trial.

On February 25, 2016, appellant had filed a written "Motion to Waive Counsel and Proceed Pro Se."

The court had instructed the jurors not to do any research about the case on the internet.