# United States Court of Appeals
## For the Eighth Circuit

_____

No. 18-2915

_____

Byron David Smith,

*Petitioner - Appellant*,

v.

Jeff Titus, Warden, MCF - Oak Park Heights,[1]

*Respondent - Appellee.*

_____

Appeal from United States District Court
for the District of Minnesota - St. Paul

_____

Submitted: November 13, 2019
Filed: May 5, 2020

_____

Before COLLOTON, WOLLMAN, and BENTON, Circuit Judges.

_____

COLLOTON, Circuit Judge.

A jury in Minnesota state court convicted Byron Smith on two counts of murder in 2014, and the trial court imposed two life sentences. The Minnesota

_____

[1]Warden Titus is automatically substituted for his predecessor under Federal Rule of Appellate Procedure 43(c)(2).

Supreme Court affirmed Smith's convictions on direct review. *State v. Smith*, 876 N.W.2d 310 (Minn. 2016). Among other points, the court rejected Smith's argument that the trial court violated his Sixth Amendment right to a public trial when it briefly closed the courtroom to spectators. Smith later applied for a writ of habeas corpus in federal court and raised his Sixth Amendment claim. The district court[2] denied relief on the ground that the Minnesota Supreme Court's decision was neither contrary to, nor an unreasonable application of, clearly established federal law. We affirm.

I.

On Thanksgiving Day in 2012, Smith shot and killed two people, Nicholas Brady and Haile Kifer, who had broken into his home in Little Falls, Minnesota. The prosecution presented evidence that Smith shot each of the victims as they descended stairs into the basement of his home, and then shot and killed each of them at close range after they lay injured on the basement floor.

Smith maintained that he used reasonable force in defense of himself and his home. He sought to introduce evidence at trial that Brady had participated in a series of burglaries of Smith's house in the weeks before the shooting. Although there was no evidence that Smith knew or suspected Brady before the date of the shooting, Smith wanted to call witnesses to testify about Brady's involvement in the previous burglaries.

The trial court held two hearings, open to the public, on March 25 and April 17, 2014. On April 4, after the first hearing, the court filed a public order ruling that the occurrence of the prior burglaries was relevant, but that Brady's involvement in

[2]The Honorable John R. Tunheim, Chief Judge, United States District Court for the District of Minnesota.

those burglaries was not. The court reasoned that the reasonableness of Smith's actions must be determined by his state of mind at the time of the shootings, not by what he learned later about Brady's alleged participation. At the public hearing on April 17, Smith argued that the court should allow him to call three witnesses to testify about Brady's involvement in the burglaries: Brady's mother and two of Brady's alleged co-participants, J.K. and C.K. Defense counsel identified the potential witnesses by name at the hearing, and their full names appeared in the public record of the proceedings.

The court next convened on April 21 for the first day of trial. Jury selection had been completed the week before, but the jury had not yet taken its final oath. When Smith's case was called that morning, the court immediately cleared all spectators from the courtroom. Smith's counsel objected to the closure, asking that the general public and members of the media be allowed to observe, because "[t]o not allow that would infringe upon the freedom of the public to be present as well as free press" and would violate Smith's "right to a public trial."

The court overruled the objection and proceeded to discuss its ruling on Smith's request to call witnesses about the prior burglaries:

> [T]he pretrial ruling of the court was that the defense had given notice that it . . . wants to offer testimony from [J.K.] and [C.K.] about their involvement in prior burglaries which, of course, would have involved Nick Brady as well as a co-perpetrator. And the court has ruled the defendant will not disclose the names of [J.K., C.K.,] or Brady involved in prior burglaries . . . .

The court then explained why it closed the courtroom:

> And for that reason -- that was the reason that the court is not allowing the press in for this ruling, because otherwise it could be printed, and indeed, while the jurors hopefully will follow the admonition not to read

or hear anything in the press and TV and such in the meantime while this case is pending, certainly the media would publish and print the substance of the court's pretrial ruling, and then of course it runs the risk of getting to the jury if for some reason they don't adhere to their oath.

Shortly after this exchange, the trial court filed a public order ruling on the motion in limine that was discussed during the closure. The order "reiterate[d]" that evidence of prior bad acts by Brady or Kifer of which Smith was unaware at the time of the shooting would be inadmissible. The court ruled that Smith could elicit evidence about the fact of prior burglaries through law enforcement agents, but that there would "be no need to seek its admission through more prejudicial means (*i.e.,* through the testimony of Brady's mother or of a perpetrator of the prior break-ins)." A few minutes later, the court reopened the courtroom, swore in the jury, and proceeded to opening statements in the trial.

The jury found Smith guilty of two counts of murder, and the court sentenced him to two life terms in prison. Smith appealed to the Minnesota Supreme Court on several grounds, including that the trial court allegedly denied his Sixth Amendment right to a "public trial" when it briefly closed the courtroom. The Sixth Amendment provides that "[i]n all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial." U.S. Const. amend. VI.

The Minnesota court concluded that the trial court's "nonpublic proceeding was administrative in nature and did not constitute a closure implicating Smith's Sixth Amendment right to a public trial." 876 N.W.2d at 330. The court explained that the brief proceeding was an outgrowth of the earlier public hearings that resulted in public orders dated April 4 and April 21, and that the essence of the nonpublic proceeding on April 24 was the trial court's explaining the parameters of its written decision of April 21. The court said: "This was an issue of evidentiary boundaries, similar to what would ordinarily and regularly be discussed in chambers or at a sidebar conference—on the record, but outside the hearing of the public." *Id.* Noting

that the discussion took only minutes, was transcribed, and consumed only two-tenths of one percent of the trial transcript, the court held that Smith received a public trial, and that his Sixth Amendment rights were not violated. *Id.*

Smith sought a writ of habeas corpus under 28 U.S.C. § 2254. The district court denied his application on the ground that the Minnesota court's decision was not contrary to, or an unreasonable application of, clearly established federal law. *See* 28 U.S.C. § 2254(d)(1). We review that conclusion *de novo*.

II.

The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) addresses when an application for a writ of habeas corpus from a state prisoner may be granted with respect to a claim that was adjudicated on the merits in state court. 28 U.S.C. § 2254(d). The provision at issue here states that an application "shall not be granted" unless the adjudication "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." *Id*. § 2254(d)(1).

A state court decision is "contrary to" clearly established federal law if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law, or if the state court reaches the opposite result in a case involving facts that are materially indistinguishable from relevant Supreme Court precedent. *Williams v. Taylor*, 529 U.S. 362, 405 (2000). An "unreasonable application" of clearly established federal law "occurs when a state court correctly identifies the governing legal standard but either unreasonably applies it to the facts of the particular case or unreasonably extends or refuses to extend the legal standard to a new context." *Munt v. Grandlienard*, 829 F.3d 610, 614 (8th Cir. 2016); *see Williams*, 529 U.S. at 407. An "unreasonable application" is different from an incorrect or erroneous application; a prisoner must establish that a state court's

-5-

adjudication was not only wrong, but also objectively unreasonable, such that "fairminded jurists" could not disagree about the proper resolution. *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004); *see Williams*, 529 U.S. at 409-12.

Satisfying either prong under 28 U.S.C. § 2254(d)(1) is meant to be difficult, because AEDPA "reflects the view that habeas corpus is a guard against extreme malfunctions in the state criminal justice systems." *Harrington v. Richter*, 562 U.S. 86, 102 (2011) (internal quotation omitted). Relief is available only where a state court's ruling on a federal claim "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id.* at 103.

Smith argues that he meets this standard, because the Minnesota Supreme Court's decision was contrary to, and involved an unreasonable application of, two Supreme Court decisions: *Waller v. Georgia*, 467 U.S. 39 (1984), and *Presley v. Georgia*, 558 U.S. 209 (2010) (per curiam). *Waller* held that the Sixth Amendment right to a "public trial" encompassed a pretrial hearing on a motion to suppress evidence in a criminal case. The Court explained that to justify a closure of such a hearing, "the party seeking to close the hearing must advance an overriding interest that is likely to be prejudiced, the closure must be no broader than necessary to protect that interest, the trial court must consider reasonable alternatives to closing the proceeding, and it must make findings adequate to support the closure." 467 U.S. at 48. Because those criteria were not satisfied in *Waller*, the Court held that there was a violation of the defendant's right under the Sixth Amendment.

In *Presley*, the Court declared that the right to a public trial forbids the closure of jury selection in a criminal case, and that a trial court must consider reasonable alternatives to closure even when they are not offered by the parties. 558 U.S. at 213-14. Applying *Waller*, the Court held that the Georgia trial court violated the

defendant's right to a public trial by closing *voir dire* proceedings without sufficient justification.

The Minnesota Supreme Court's decision is not contrary to either *Waller* or *Presley*. Neither decision addressed whether what the Minnesota court described as "administrative" proceedings—that is, "routine evidentiary rulings and matters traditionally addressed during private bench conferences or conferences in chambers," 876 N.W.2d at 329—implicate the Sixth Amendment right to a public trial. *Waller* considered whether a defendant's right to insist on a public trial "extends beyond the actual proof at trial," and concluded that it encompasses a pretrial suppression hearing in a criminal case. 467 U.S. at 44. The Court observed that "suppression hearings often are as important as the trial itself," and that "a suppression hearing often resembles a bench trial," in that "witnesses are sworn and testify, and of course counsel argue their positions." *Id.* at 46-47. *Presley* held that the right also encompasses the jury selection process and the *voir dire* of prospective jurors. 558 U.S. at 213. The Court cited a previous decision that relied on the long history of public jury selection to hold that the press and the public enjoy a First Amendment right to attend *voir dire* proceedings. *Id.*; *see Press-Enterprise Co. v. Superior Court of Cal.*, 464 U.S. 501, 505-10 (1984); *id.* at 516 (Stevens, J., concurring). The brief nonpublic proceeding in this case raises a different issue of law, on facts that are materially distinguishable, so Smith cannot show that the state court decision is contrary to clearly established federal law. *See Williams*, 529 U.S. at 405.

Smith highlights a statement in *Presley* that "*Waller* provided standards for courts to apply before excluding the public from *any stage* of a criminal trial." 558 U.S. at 213 (emphasis added). He argues that the Minnesota court's decision is contrary to *Waller*, because the nonpublic proceeding at issue here occurred at a "stage" of his trial, and the trial court did not apply the *Waller* standards. But "clearly established Federal law" under AEDPA refers to the holdings of the Supreme

Court, not *dicta*, *Williams*, 529 U.S. at 412, and the holdings of *Waller* and *Presley* were limited to suppression hearings and jury selection proceedings, respectively. Neither decision addressed whether a defendant enjoys a Sixth Amendment right to public "administrative" proceedings of the type involved in this case.

We also conclude that the Minnesota court did not unreasonably apply *Waller* and *Presley* in this case. It is an open question whether a defendant's right to a public trial encompasses the sort of nonpublic proceeding at issue here. Neither *Waller*'s bench trial analogy nor the historical pedigree of openness cited in *Presley* applies to a trial judge's articulation of an evidentiary ruling. The Fifth Circuit, for example, has rejected a claim that proceedings in chambers and at private bench conferences violate the Sixth Amendment. *United States v. Norris*, 780 F.2d 1207 (5th Cir. 1986). The court held that the concerns expressed in *Waller* were not implicated by nonpublic proceedings that consisted of "arguments of counsel and rulings by the court on technical legal questions." *Id.* at 1210. The Minnesota court also identified decisions rejecting public-trial claims for certain evidence-related proceedings, such as an inquiry into whether a witness would refuse to testify, *State v. Reed*, 352 P.3d 530, 542 (Kan. 2015), and consideration of an offer of proof. *United States v. Vázquez-Botet*, 532 F.3d 37, 51-52 (1st Cir. 2008). *Cf. Richmond Newspapers, Inc. v. Virginia*, 448 U.S. 555, 598 n.23 (1980) (Brennan, J., concurring in the judgment) ("[W]hen engaging in interchanges at the bench, the trial judge is not required [by the First Amendment] to allow public or press intrusion upon the huddle. Nor does this opinion intimate that judges are restricted in their ability to conduct conferences in chambers, inasmuch as such conferences are distinct from trial proceedings.").

Whatever the force of Smith's argument for extending *Waller* and *Presley* to cover the episode in this case and similar proceedings, "fairminded jurists could disagree" with his contention. *Yarborough*, 541 U.S. at 664. It was not objectively unreasonable for the Minnesota Supreme Court to deem it constitutional under the

Sixth Amendment for the trial court to explain the parameters of an earlier public order on evidentiary issues in a brief nonpublic proceeding before the jury was sworn.

\* \* \*

The judgment of the district court is affirmed.

_____