# United States Court of Appeals
## For the Eighth Circuit
_____

No. 19-2369
_____

Elliott Finch, Jr.

*Plaintiff - Appellee*

v.

Dexter Payne, Director, Arkansas Department of Correction

*Defendant - Appellant*
_____

Appeal from United States District Court
for the Eastern District of Arkansas - Pine Bluff
_____

Submitted: September 22, 2020
Filed: December 18, 2020
_____

Before LOKEN, SHEPHERD, and ERICKSON, Circuit Judges.
_____

SHEPHERD, Circuit Judge.

A Pulaski County, Arkansas, jury convicted Elliot Harold Finch, Jr. of aggravated residential burglary, aggravated assault on a family or household member, and first-degree terroristic threatening. Finch was subject to a firearm enhancement and sentenced as a habitual offender, resulting in a sentence of life imprisonment plus 15 years in the Arkansas Department of Corrections and a $10,000 fine. Finch appealed his conviction to the Arkansas Supreme Court, alleging that he was denied his Sixth Amendment right to self-representation and

that he was prejudiced by juror misconduct. The Arkansas Supreme Court affirmed the conviction. Finch challenged his conviction under 28 U.S.C. § 2254 in the United States District Court for the Eastern District of Arkansas, raising the same arguments as in state court. The district court[1] granted Finch's petition based on his Sixth Amendment claim. The State of Arkansas (the State) now appeals, arguing that the district court failed to give proper deference to the Arkansas Supreme Court's factual determinations. Having jurisdiction under 28 U.S.C. § 1291, we affirm.

I.

On August 22, 2013, Finch entered his ex-girlfriend's house by breaking through a window. His ex-girlfriend was home with her two children and was taking a shower. Finch met her at gunpoint as she exited the shower and threatened to kill her, her children, and himself. The ex-girlfriend attempted to calm Finch down, eventually resorting to sexual intercourse with him to alleviate the immediate threat of violence. Finch did not leave the home after having sex with the ex-girlfriend. He stayed the night, sleeping in the ex-girlfriend's bed with her, but positioning himself between her and the door so she could not leave without his knowledge. The next morning, Finch allowed the ex-girlfriend to leave for work. She took her nine-year-old daughter with her but was unable to wake up her teenage son, who was on medication. After leaving, the ex-girlfriend called the police, and Finch was subsequently arrested. Finch was charged with kidnapping, aggravated residential burglary, possession of firearms by certain persons, aggravated assault on a family or household member, and first-degree terroristic threatening.

Finch received court appointed counsel, and the matter proceeded to trial. At some point during the pretrial proceedings, Finch became frustrated with his court-appointed counsel. At a September 22, 2015 omnibus hearing, Finch requested to

---

[1]The Honorable Billy Roy Wilson, United States Judge for the Eastern District of Arkansas, adopting the report and recommendation of the Honorable Patricia S. Harris, United States Magistrate Judge for the Eastern District of Arkansas.

speak and informed the court that he wanted new counsel. R. Doc. 7-2, at 328. The trial judge denied the request. R. Doc. 7-2, at 328. At an October 19, 2015 hearing, Finch stated: "I want to represent myself then"; "I want to represent myself."; "I want to represent myself, Your Honor. And that's all I'm telling you"; and "I don't want no attorney." R. Doc. 7-3, at 10-12. The trial judge again dismissed the request on the basis that Finch had not properly cooperated with his Act 3 mental evaluation.[2] R. Doc. 7-3, at 15.

Thereafter, Finch filed a handwritten motion to waive counsel and proceed pro se, citing Faretta v. California, 422 U.S. 806 (1975). R. Doc. 7-2, at 136. On March 10, 2016, the court conducted a hearing to discuss Finch's second Act 3 evaluation report, where Finch's counsel brought the pending motion to the court's attention. R. Doc. 7-3, at 40. The court and the prosecution acknowledged Finch's request, and the court engaged Finch in a colloquy regarding his knowledge of the judicial system. See R. Doc. 7-3, at 40-51. While Finch wished to proceed pro se, he inquired about the availability of "standby counsel." R. Doc. 7-3, at 50. Ultimately, the trial judge denied the motion "based on the seriousness of the offenses and the likelihood of [Finch] getting some serious time." R. Doc. 7-3, at 51. The case proceeded to trial with Finch's court-appointed attorney. The jury convicted Finch of aggravated residential robbery, aggravated assault on a family or household member, and first-degree terroristic threatening and was unable to reach

---

[2]An Act 3 mental evaluation may be ordered by the court or requested by the defendant whenever the defendant "intends to rely upon the defense of mental disease or defect" or "[t]here is reason to doubt the defendant's fitness to proceed." Ark. Code Ann. § 5-2-305 (repealed 2017). Finch underwent two Act 3 evaluations. In each evaluation, the forensic pathologist determined that Finch possessed the mental fitness required to participate in the proceedings. However, Finch refused to participate in the part of the evaluation focused on his mental state at the time of the offense because he did not intend to rely upon a defense of not guilty by reason of mental disease or defect.

a verdict on kidnapping, resulting in a mistrial on that charge.[3]  Finch received an aggregate sentence of life imprisonment plus 15 years and a $10,000 fine.

Finch appealed his conviction to the Arkansas Supreme Court, arguing that he had been denied his Sixth Amendment right to self-representation and that he had been prejudiced by juror misconduct.  The Arkansas Supreme Court found that the trial court's inquiry "included irrelevant concerns, such as [Finch]'s level of education and technical legal knowledge, and the court's stated basis for denying the request . . . was invalid."  Finch v. State, 542 S.W.3d 143, 145 (Ark. 2018).  The Arkansas Supreme Court nonetheless held, under its independent review, that Finch's request was not unequivocal and that "the trial court could have concluded that [Finch] had 'engaged in conduct that would prevent the fair and orderly exposition of the issues.'"  Id.  Based on these holdings, the Arkansas Supreme Court determined that Finch had not invoked his right to defend himself pro se.  The court additionally found that Finch "could not show a reasonable possibility of prejudice" to succeed on his juror misconduct claim and affirmed his conviction.  Id. at 149.

Finch then sought a writ of habeas corpus pursuant to 28 U.S.C. § 2254 in federal court.  Finch raised the same two issues as in state court: (1) that he was denied his Sixth Amendment right to self-representation; and (2) that he was prejudiced by juror misconduct.  In considering Finch's Sixth Amendment claim, the magistrate judge thoroughly reviewed and documented the state court proceedings.  The magistrate judge determined that the Arkansas Supreme Court's legal framework under Faretta was reasonable in deciding whether Finch had invoked his right to waive counsel, pursuant to 28 U.S.C. § 2254(d)(1).  The magistrate judge went on to discuss the Arkansas Supreme Court's factual determinations, or lack thereof, under subsection (d)(2) in great detail.  The magistrate judge determined that the Arkansas Supreme Court made three specific factual findings: (1) the trial court's questions to Finch were irrelevant; (2) Finch's

---

[3]The charge for possession of firearms by certain persons was severed before trial.

-4-

requests to represent himself were equivocal; and (3) Finch was disruptive, preventing a fair and orderly exposition of the issues. The magistrate judge then considered whether Finch overcame the state court's presumption of correctness under 28 U.S.C. § 2254(e)(1) by clear and convincing evidence. The magistrate judge agreed with the determination that the trial court's questions of Finch were irrelevant, but she found that Finch had overcome the presumption of correctness of the latter two findings and that the Arkansas Supreme Court's determinations were unreasonable. The magistrate judge determined that Finch had unequivocally invoked his right to self-representation on multiple occasions, including in a written motion. The magistrate judge further found that the record does not reflect that Finch's behavior prevented "a fair and orderly exposition of the issues," especially in light of the more extreme misbehavior documented in the case law. Finally, the magistrate judge summarily found Finch's second claim to be without merit because the state court determined that Finch was not prejudiced by the juror misconduct and such determination was entitled to deference under 28 U.S.C. § 2254.

The district court approved and adopted the magistrate judge's report and recommendation and granted Finch's habeas petition, directing the State to either release Finch or provide him with a new trial within 120 days of the order. The State appealed the district court's findings. Only Finch's Sixth Amendment claim is before this Court on appeal.

II.

"On appeal from a district court's grant of a habeas petition, we review the district court's findings of fact for clear error, and its conclusions of law de novo." Franklin v. Hawley, 879 F.3d 307, 311 (8th Cir. 2018) (quoting Escobedo v. Lund, 760 F.3d 863, 868 (8th Cir. 2014)). However, because Finch's petition is based on a state court adjudication, we are further restricted by the limitations set forth in 28 U.S.C. § 2254. Gray v. Norman, 739 F.3d 1113, 1116 (8th Cir. 2014). Section 2254 states, in part:

(d)    An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—

    (1)    resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

    (2)    resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

(e)(1) In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct.  The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence.

28 U.S.C. § 2254(d)-(e)(1).

Section 2254(d)(1) clearly refers to situations where a "state court applies a rule that contradicts the governing law set forth in [the Supreme Court's] cases" or where it "confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [Supreme Court] precedent." Williams v. Taylor, 529 U.S. 362, 405-06 (2000).  This category of cases can be described as those presenting "questions of law," or purely legal issues.  The magistrate judge employed this aspect of § 2254(d)(1) when she determined that the Arkansas Supreme Court's articulation of Faretta was not contrary to the Supreme Court's jurisprudence.[4]

---

[4]The Arkansas Supreme Court articulated Faretta in the following manner:

A defendant may waive the right to counsel and invoke his right to defend himself pro se provided that (1) the request to waive the right to counsel is unequivocal and timely asserted, (2) there has been a

However, § 2254(d)(1) also includes those instances where a "state court identifies the correct governing legal principle . . . but unreasonably applies that principle to the facts of the prisoner's case." Id. at 413; see also Bell v. Cone, 535 U.S. 685, 694 (2002) ("The court may grant relief under the 'unreasonable application' clause if the state court correctly identifies the governing legal principle from our decisions but unreasonably applies it to the facts of the particular case."). The Supreme Court has "sometimes referred to such a question, which has both factual and legal elements, as a 'mixed question of law and fact.'" Guerrero-Lasprilla v. Barr, 140 S. Ct. 1062, 1069 (2020).[5]

"In the § 2254(d) context, as elsewhere, the appropriate methodology for distinguishing questions of fact from questions of law has been, to say the least, elusive[,]" but we find no difficulty categorizing the present determinations. Miller v. Fenton, 474 U.S. 104, 113 (1985). This case requires this Court to determine whether the record supports a finding that Finch invoked his right to self-representation under Faretta. These "application-of-legal-standard-to-fact sort of question[s]" are mixed questions of law and fact. See United States v. Gaudin, 515 U.S. 506, 512 (1995). Such questions, as we have indicated above, are reviewed

---

knowing and intelligent waiver of the right to counsel, and (3) the defendant has not engaged in conduct that would prevent the fair and orderly exposition of the issues.

Finch, 542 S.W.3d at 145-46. The magistrate found that this articulation was not contrary to, or an unreasonable application of, Faretta.

[5]On the other hand, § 2254(d)(2) governs determinations that are purely factual in nature. Of course, even further discussion is necessary to determine the interplay between §§ 2254(d)(2) and (e)(1) as they employ two separate standards of review for factual determinations: unreasonableness and incorrect by clear and convincing evidence, respectively. See Wood v. Allen, 558 U.S. 290, 300 (2010) ("Although we granted certiorari to resolve the question of how §§ 2254(d)(2) and (e)(1) fit together, we find once more that we need not reach this question . . . ."). However, we do not find such discussion necessary to dispose of the present case.

under § 2254(d)(1)'s "unreasonable application" clause.  See Williams, 529 U.S. at 413.

This distinction is critical because the Arkansas Supreme Court's determinations, as facts applied to law, are not afforded the "presumption of correctness" of § 2254(e)(1).  Section 2254(e)(1) only applies to factual issues.  Issues of fact are:

> basic, primary, or historical facts: facts "in the sense of a recital of external events and the credibility of their narrators . . . ."  So-called mixed questions of fact and law, which require the application of a legal standard to the historical-fact determinations, are not facts in this sense.

Townsend v. Sain, 372 U.S. 293, 309 n.6 (1963) (alteration in original) (citation omitted).  In this case, the relevant historical facts of Finch's case are immortalized in the respective court transcripts and filings and are undisputed by the parties.  We are tasked only with considering whether "the[se] historical facts . . . satisfy the legal test chosen."  Guerrero-Lasprilla, 140 S. Ct. at 1069 (citation omitted).  Therefore, our review is limited to determining only whether the Arkansas Supreme Court's disposition of Finch's case "involved an unreasonable application of[] clearly established Federal law."  28 U.S.C. § 2254(d)(1).

Under § 2254(d)(1) we must determine "whether the state court's application of clearly established federal law was objectively unreasonable."  Williams, 529 U.S. at 409.  "An 'unreasonable application' is different from an incorrect or erroneous application; a prisoner must establish that a state court's adjudication was not only wrong, but also objectively unreasonable, such that 'fairminded jurists' could not disagree about the proper resolution."  Smith v. Titus, 958 F.3d 687, 691 (8th Cir. 2020), appeal docketed, No. 20-633 (U.S. Nov. 10, 2020) (citation omitted); see also Strong v. Roper, 737 F.3d 506, 510 (8th Cir. 2013) ("[I]t is not enough for us to conclude that, in our independent judgment, we would have applied federal law differently from the state court; the state court's application must have been

objectively unreasonable." (quoting Rousan v. Roper, 436 F.3d 951, 956 (8th Cir. 2006))).

## A.

The State first contends that the Arkansas Supreme Court reasonably determined that Finch's invocation of self-representation was equivocal. "The Sixth Amendment . . . implies a right of self-representation." Faretta, 422 U.S. at 821. "'If [a defendant's] request' to 'assert his right to self-representation' 'is clear and unequivocal, a Faretta hearing must follow.'" United States v. Kelley, 787 F.3d 915, 918 (8th Cir. 2015) (alteration in original) (quoting Bilauski v. Steele, 754 F.3d 519, 522 (8th Cir. 2014)). "Equivocation, which sometimes refers only to speech, is broader in the context of the Sixth Amendment, and takes into account conduct as well as other expressions of intent." Bilauski, 754 F.3d at 523 (citation omitted).

> [W]hen a defendant in a criminal case has moved to represent himself and the court has not entered a 'clear' and 'conclusive[]' denial, it is incumbent on the defendant to 'reassert his desire to proceed *pro se*'; his failure to do so . . . 'constitute[s] a waiver of his previously asserted Sixth Amendment' right to proceed *pro se*.

Id. at 522 (quoting United States v. Barnes, 693 F.3d 261, 272 (2d Cir. 2012)). "However, to avoid waiver of a previously invoked right to self-representation, a defendant need not 'continually renew his request to represent himself even after it is conclusively denied by the trial court.'" Wilson v. Walker, 204 F.3d 33, 37 (2d Cir. 2000) (citation omitted).

At the trial court level, Finch made no less than two requests to proceed pro se: October 19, 2015, and February 25, 2016. At the October 19, 2015 omnibus hearing, Finch stated: "I want to represent myself then."; "I want to represent myself."; "I want to represent myself, your Honor. And that's all I'm telling you."; and "I don't want no attorney." R. Doc. 7-3, at 10-12. In the Arkansas Supreme Court's view, these comments are "interspersed [with] his complaints about his

-9-

attorney" and interruptions. Finch, 542 S.W.3d at 146. However, Finch's request to proceed pro se was well understood by the trial court, as the trial court proceeded to question Finch concerning his technical legal knowledge and denied his motion based on "the history that [the trial court] had with [the] report from Act 3 and all that." R. Doc. 7-3, at 15.

After this "clear" and "conclusive" denial, Finch was under no further obligation to reassert his Sixth Amendment right to self-representation. Bilauski, 754 F.3d at 522; Wilson, 204 F.3d at 37. Nevertheless, Finch continued to passionately pursue his constitutional right. On February 25, 2016, Finch filed a pro se motion to waive counsel, *citing Faretta* and requesting a hearing. The motion was addressed at the March 10, 2016 hearing, but only after Finch's court-appointed counsel brought it to the attention of the trial court. The State is quick to point out Finch's requests for "new counsel" and "standby counsel" during this colloquy, but in doing so, it ignores its own request to view Finch's invocations in a contextual setting.[6] Every party to the hearing—the trial court, the prosecutor, the court-appointed defense counsel, and Finch—understood Finch's request to be an invocation of his right to proceed pro se. The trial court again questioned Finch regarding matters irrelevant to a Faretta analysis, such as Finch's technical legal knowledge. The trial court denied Finch's motion "based on the seriousness of the offenses and the likelihood of [Finch] getting some serious time," which, as the Arkansas Supreme Court identified, are "invalid" bases for denying Finch's Sixth Amendment right to self-representation. See Finch, 542 S.W.3d at 146; see also Faretta, 422 U.S. at 834 ("[A]lthough he may conduct his own defense ultimately to his own detriment, his choice must be honored out of 'that respect for the individual which is the lifeblood of the law.'" (citation omitted)).

---

[6]We note that Finch's comments regarding "standby counsel" do not equivocate his invocation to proceed pro se. The Supreme Court has stated that the appointment of standby counsel is in fact an appropriate mechanism to balance the needs of the judicial process and the defendant's rights. See Faretta, 422 U.S. at 834 n.46; see also McKaskle v. Wiggins, 465 U.S. 168, 174 (1984).

The Arkansas Supreme Court failed to identify any other basis for finding that Finch's requests were equivocal. Applying the historical facts of the record to Faretta, we conclude that Finch clearly and unequivocally invoked his right to self-representation. As soon as Finch manifested this clear and unequivocal invocation, the proceedings should have paused, and the trial court should have conducted a proper Faretta hearing. The Arkansas Supreme Court's finding to the contrary is objectively unreasonable.

B.

The State next contends that the Arkansas Supreme Court's determination that "the trial court could have concluded that [Finch] had 'engaged in conduct that would prevent the fair and orderly exposition of the issues'" was a reasonable determination under § 2254, precluding the district court's grant of Finch's habeas petition. "'The right to self-representation . . . is not absolute. Once the defendant makes a clear and unequivocal request to represent himself, a court may nonetheless deny the request in certain circumstances,' such as when . . . the defendant 'engages in *serious* and *obstructionist* misconduct . . . .'" Kelley, 787 F.3d at 917-18 (first alteration in original) (emphasis added) (quoting United States v. Edelmann, 458 F.3d 791, 808 (8th Cir. 2006)). The type of conduct required for a court to deny a defendant's request to proceed pro se generally requires extreme disruption of the judicial process. See, e.g., United States v. Luscombe, 950 F.3d 1021 (8th Cir. 2020) (affirming the revocation of the defendant's right to self-representation when the defendant defied court orders, argued and interrupted witnesses repeatedly, and attempted to serve numerous harassing subpoenas on victims). Unless other aggravating factors are present, courts typically do not deny a defendant's initial motion to proceed pro se, but instead revoke the previously granted self-representation if the defendant subsequently engages in obstructionist behavior. See, e.g., id.; Edelmann, 458 F.3d 791 (affirming the *initial* denial of the defendant's right to self-representation when the defendant waited until five days before trial, requested and received several continuances, and coupled her request with several other motions).

-11-

Finch's behavior is starkly mild compared to the level of obstructionist conduct outlined above. At worst, Finch spoke out of turn during two hearings and refused to comply with a portion of a mental evaluation he did not wish to use in his defense. While Finch's behavior is not that of the model defendant, we can understand the frustration of an individual who is attempting to assert his Sixth Amendment right, only to be ignored and forced to participate in a defense that is not his. See Faretta, 422 U.S. at 834 ("To force a lawyer on a defendant can only lead him to believe that the law contrives against him. Moreover, it is not inconceivable that in some rare instances, the defendant might in fact present his case more effectively by conducting his own defense.").

There is no evidence in the record that Finch was attempting to manipulate, subvert, or delay the trial process. In contrast, Finch regularly upheld decorum by referring to the trial court judge as "sir" and "Your Honor," and was responsive to the court's questioning. See Finch, 543 S.W.3d at 154 (Hart, J., dissenting). The record does not support a finding that Finch engaged in serious and obstructionist misconduct, and the Arkansas Supreme Court's finding to the contrary is objectively unreasonable.

C.

Finally, the State contends that the district court erred by treating as dicta the Arkansas Supreme Court's determination that Finch was not capable of "knowingly and intelligently" waiving his right to counsel. "When an accused manages his own defense, he relinquishes, as a purely factual matter, many of the traditional benefits associated with the right to counsel. For this reason, in order to represent himself, the accused must 'knowingly and intelligently' forgo those relinquished benefits." Faretta, 422 U.S. at 835 (citation omitted). The Arkansas Supreme Court mentioned this "knowingly and intelligently" requirement,[7] but the magistrate judge determined

---

[7]The Arkansas Supreme Court stated: "[T]he [trial] court ordered a mental evaluation at the state hospital at this hearing to determine [Finch]'s fitness to proceed. This court has held that a trial court cannot determine whether a waiver of

-12-

that such reference was dicta and not a basis of the court's decision.  On appeal, the State argues that this was a determination by the Arkansas Supreme Court that Finch was incapable, under <u>Faretta</u>, to waive his right to counsel and proceed pro se.

However, in its objection to the magistrate judge's findings and recommendation, the State objected to the characterization of the Arkansas Supreme Court's determination as dicta on a completely separate basis, arguing that it was a factual determination relating to Finch's alleged obstructionist conduct with no reference to the requirement of a "knowing and intelligent" waiver under <u>Faretta</u>. The argument of whether Finch knowingly and intelligently waived his right to counsel was not presented to the district court, and "this court will not [ordinarily] consider arguments raised for the first time on appeal."  <u>Wiser v. Wayne Farms</u>, 411 F.3d 923, 926 (8th Cir. 2005); <u>see also</u> <u>Barnett v. Roper</u>, 541 F.3d 804, 807-08 (8th Cir. 2008).  Therefore, because the State failed to present this argument to the district court, it has been waived on appeal.

### III.

As the Supreme Court stated in <u>Faretta</u>:

> The right to defend is personal.  The defendant, and not his lawyer or the [State], will bear the personal consequences of a conviction.  It is the defendant, therefore, who must be free personally to decide whether in his particular case counsel is to his advantage.  And although he may conduct his own defense ultimately to his own detriment, his choice must be honored out of "that respect for the individual which is the lifeblood of the law."

---

counsel is knowingly and intelligently made when an examination of a defendant's competency to stand trial had not yet been made." <u>Finch</u>, 543 S.W.3d at 146.  The magistrate judge viewed this statement as dicta because, as the record supports, Finch had already been determined competent to stand trial.

422 U.S. at 834 (quoting <u>Illinois v. Allen</u>, 397 U.S. 337, 350-51 (1970) (Brennan, J., concurring)).

The judgment of the district court is affirmed.

_____