# United States Court of Appeals
## For the Eighth Circuit

_____

No. 22-2054
_____

Darrell I. Bolden

*Petitioner - Appellee*

v.

David Vandergriff

*Respondent - Appellant*
_____

Appeal from United States District Court
for the Eastern District of Missouri - St. Louis
_____

Submitted: January 10, 2023
Filed: June 1, 2023
_____

Before KELLY, ERICKSON, and STRAS, Circuit Judges.
_____

ERICKSON, Circuit Judge.

A Missouri trial court declined to permit Darrell Bolden to represent himself. After conviction at trial, an unsuccessful direct appeal, and an unsuccessful attempt to collaterally attack his convictions in state court, Bolden filed a petition under 28 U.S.C. § 2254 in federal court. The district court granted Bolden's petition, finding Bolden had unequivocally invoked his right of self-representation and the Missouri

trial court failed to conduct a proper hearing under <u>Faretta v. California</u>, 422 U.S. 806 (1975).  We reverse.

## I.    BACKGROUND

In November 2013, the Missouri state court consolidated five separate indictments into a single case.  Bolden faced eleven felony counts as a persistent felony offender.  He was convicted of three counts of first-degree robbery, one count of attempted first-degree robbery, and three counts of armed criminal action.  The trial court sentenced Bolden to concurrent life sentences on the robbery counts plus 25 years on the armed criminal action counts.

During pretrial proceedings, Bolden requested to proceed *pro se*.  On May 2, 2013, the court held a hearing, during which Bolden asserted, as a Moor, he was unable to be represented by counsel.  In response, the court told Bolden that it needed to ensure he was making an informed decision and set the matter for a later hearing.

On July 10, 2013, the court took up Bolden's request to represent himself, explaining to Bolden that a request to proceed *pro se* must be unequivocal.  While Bolden had expressed a desire to have all the witnesses deposed, the court informed Bolden that conditional requests are not permitted.  The court advised Bolden that if he represented himself, there would be no funds available for Bolden to take depositions or conduct an investigation and all motions would be Bolden's responsibility.  Bolden expressed frustration that his previously-filed speedy trial motions had been denied and stated that he did not want counsel to represent him. He told the court that if his speedy trial requests had been honored, then he would have wanted counsel.  The court informed Bolden that he faced up to life in prison and advised Bolden that proceeding *pro se* would be a "big" and "horrible" mistake. The court made plain to Bolden that he would only get one chance at a trial and trial would not take place more quickly if he proceeded *pro se*.  When Bolden persisted in his request to represent himself and continued demanding a speedy trial, the court directed Bolden to read thoroughly the form on waiving counsel and then Bolden

would be brought back before the court. In the meantime, trials of other *pro se* defendants were scheduled to take place, and the court believed the results in those cases might impact Bolden's decision. Over Bolden's objection, the court deferred ruling on Bolden's request to give Bolden time to reconsider his decision.

Three weeks later, the court held another hearing. Rather than conduct another inquiry, the court ruled Bolden could not proceed *pro se* because his waiver of the right to counsel was conditional, as Bolden continued to be interested in deposing witnesses and counsel had indicated there were motions to be filed. Bolden proceeded to trial with the assistance of counsel.

Following the convictions, Bolden appealed the denial of his request to proceed *pro se*. The Missouri Court of Appeals affirmed, reasoning Bolden's request to represent himself "was conditional and neither unequivocal nor knowing and intelligent." The appellate court found Bolden had stated he wanted counsel if the court granted his speedy trial motions. The court also found Bolden wanted counsel to depose witnesses, even after learning counsel could assist with this task only if he did not proceed *pro se*. Finally, the court found that while the trial "court implored Bolden to read and consider a standard form advising defendants of the hazards of self-representation, . . . Bolden refused to read it and told the court that he didn't want an opportunity to think about the implications of his decision."

The district court granted Bolden's § 2254 petition, finding the Missouri Court of Appeals unreasonably applied clearly established federal law in determining Bolden had not been deprived of his right to self-representation because Bolden's assertion of the right was unequivocal, and the Missouri trial court erroneously failed to conduct a proper <u>Faretta</u> hearing. The state appeals, asserting the district court failed to give appropriate deference to the state court's decision.

## II.    DISCUSSION

We generally review a district court's findings of fact for clear error, and its conclusions of law *de novo*. Franklin v. Hawley, 879 F.3d 307, 311 (8th Cir. 2018) (citation omitted). However, § 2254 limits the scope of our review. Under § 2254, "a determination of a factual issue made by a State court shall be presumed to be correct" and a petitioner has the burden to rebut this presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1). "Issues of fact are basic, primary, or historical facts: facts in the sense of a recital of external events and the credibility of their narrators." Finch v. Payne, 983 F.3d 973, 980 (8th Cir. 2020) (cleaned up). In contrast, determinations regarding "mixed questions of fact and law, which require the application of a legal standard to the historical-fact determinations" are not factual determinations and are not entitled to a presumption of correctness. Id. (quoting Townsend v. Sain, 372 U.S. 293, 309 n.6 (1963)).

Under § 2254, a petitioner is entitled to relief if, among other things, the state adjudication involved an unreasonable application of clearly established federal law, as determined by the United States Supreme Court. 28 U.S.C. § 2254(d)(1). Under this standard, a petitioner is entitled to relief if the state court unreasonably applied the appropriate legal principle to the facts of the case. Finch, 983 F.3d at 979. To satisfy this standard, the state court's adjudication must be objectively unreasonable, "such that fairminded jurists could not disagree about the proper resolution." Smith v. Titus, 958 F.3d 687, 691 (8th Cir. 2020) (quoting Yarborough v. Alvarado, 541 U.S. 652, 664 (2004)). "The more general the rule, the more leeway courts have in reaching outcomes in case by case determinations." Yarborough, 541 U.S. at 653 (citation omitted).

While the Supreme Court has not thoroughly detailed the contours of the right to self-representation, it is clearly established that a defendant's invocation of the right to self-representation must be clear, unequivocal, knowing, and intelligent. See

Faretta, 422 U.S. at 835-36 (citation omitted).[1]  Here, the Missouri Court of Appeals made two pertinent factual findings.  First, the court found Bolden would accept representation only if the trial court granted his motions for a speedy trial.  Second, the court found Bolden indicated he wanted witnesses to be deposed.  Because these findings involve no application of law, they are findings based on facts "in the sense of a recital of external events and the credibility of" Bolden rather than findings based on mixed questions of fact and law.  See Finch 983 F.3d at 980 (citation omitted).  We must presume these factual findings are correct unless Bolden demonstrates otherwise.  The district court erred by failing to apply this framework.

Bolden has not demonstrated either factual finding is unsupported in the record or unreasonable.  While Bolden suggests his request to proceed *pro se* was unconditional, the record shows that he continued to demand a speedy trial and desired counsel if the court honored his speedy trial demands, even after the court definitively denied his motions.  Bolden's other assertion that he never said he wanted counsel to depose witnesses conflicts with the record, which reflects Bolden repeatedly expressing a desire to depose witnesses, even after the court informed him counsel could not do so if Bolden proceeded *pro se*.

Given the state court's factual findings, the Missouri Court of Appeals did not unreasonably apply Supreme Court jurisprudence in finding Bolden was not unequivocal in his request to proceed *pro se*.  Bolden conditioned his self-representation request on his speedy trial motions being denied, and wanted counsel to depose witnesses even after being informed counsel could not do so if he was *pro se*.  From these facts, a court could reasonably conclude Bolden's waiver of the right to counsel was not unequivocal.  We need not address Bolden's remaining claim regarding whether his waiver of the right to counsel was knowing and intelligent.

---

[1]The Supreme Court has also never stated that a special hearing must be convened to decide whether a defendant's waiver is knowing, unequivocal, voluntary, and intelligent.  Even if such a hearing is required, the trial court's proceedings and inquiries of Bolden were sufficient to satisfy any hearing requirement under Faretta and its progeny.

## III.  CONCLUSION

For the foregoing reasons, we reverse the judgment of the district court and remand for entry of judgment in favor of the state.

KELLY, Circuit Judge, dissenting.

As I read the record, the Missouri Court of Appeals' decision affirming the denial of Bolden's requests for self-representation involved an unreasonable application of clearly established federal law to the facts of the case.  See 28 U.S.C. § 2254(d)(1) (providing that a petitioner shall be entitled to relief if the state-court decision "involved an unreasonable application of[] clearly established Federal law, as determined by the Supreme Court of the United States"); Williams v. Taylor, 529 U.S. 362, 407–08 (2000) (explaining that a state-court decision unreasonably applies federal law if it "correctly identifies the governing legal rule but applies it unreasonably to the facts of a particular prisoner's case").

"The Sixth Amendment does not provide merely that a defense shall be made for the accused; it grants to the accused personally the right to make his defense." Faretta, 422 U.S. at 819.  To invoke the right to self-representation, a defendant must "clearly and unequivocally declare[] to the trial judge that he want[s] to represent himself and d[oes] not want counsel." Id. at 835.

The court rests its conclusion that Bolden did not sufficiently invoke his right to self-representation on two factual findings made by the Missouri Court of Appeals, namely, that Bolden agreed to representation only if the trial court granted his motions for a speedy trial, and that Bolden indicated he wanted witnesses to be deposed.  But this recitation of the facts is incomplete.  Rather than focusing on a few statements in isolation, the court must consider the entire trial-court record in context.  See Finch, 983 F.3d at 980 (noting "the relevant historical facts" of a case include "court transcripts and filings").

I start with the hearing on July 10, 2013.  After denying Bolden's previously-filed speedy trial motions, the Missouri trial court told Bolden that the only issue to be addressed at the hearing was "whether or not you want to represent yourself or if you want [your appointed counsel] to represent you."  At one point, the trial court asked Bolden, "Now it's my understanding that you are asking [your counsel] to take some depositions for you; is that true?"  Bolden responded, "Yes."  The court inquired again, "That you want some of the alleged witnesses to the alleged offenses deposed; is that true?"  Bolden affirmed, "I want all witnesses."  The trial court told Bolden that an attorney could assist him with deposing witnesses, but cautioned Bolden, "I think you would be making a horrible, horrible mistake if you decided to represent yourself alone, because if I agree or enter an order that you are going to represent yourself pro se, you will represent yourself pro se."  Bolden was unmoved. He told the court, "If I was allowed my speedy trial, yes, I was going to have [counsel] help me.  Since you are not going to honor my speedy trial, I don't want counsel.  I'm just going [pro se] because I'm a Moor."[2]

The trial court persisted in its attempt to sway Bolden, telling him in part, "[I]f you kept [your counsel] as your lawyer[,] [h]e can set up the depositions.  He can make sure you've got your discovery.  He can do the things that you request within reason, and we can move this [case] along."  Bolden responded, "I understand that, but . . . a lawyer cannot represent a Moor."  The prosecutor urged the trial court to make clear that "if [Bolden] does not have the public defender[,] he is not able to use [the public defender's] offices for depositions or anything like that."  The court obliged and informed Bolden, "So if you want [counsel] to depose these people, if you want [counsel] to file motions to suppress, if you want . . . evidence or

---

[2]Bolden's use of "Moor" may refer to a member of the Moorish Science Temple of America, an established religious organization whose practices are drawn from Islam, or may instead refer to a follower of the Moorish sovereign citizen movement, which promotes anti-government beliefs.  See Moorish Science Temple of America, Britannica, https://www.britannica.com/topic/Moorish-Science-Temple-of-America (last updated Apr. 10, 2023); Michael Crowell, Univ. of N.C. Sch. of Gov't, A Quick Guide to Sovereign Citizens 3–4 (Nov. 2015), https://www.sog.unc.edu/sites/default/files/reports/aojb1504.pdf.

statements, that is not an unequivocal request to act pro se. When I say you're pro se, you will never see [your counsel] again." Bolden was not persuaded, saying, "I'm going to represent myself. . . . Since I can't have a speedy trial, I'm just going to represent myself." The trial court did not rule on Bolden's request for self-representation. Instead, it told Bolden, "I'll bring you back next week. We'll talk about it."

The next hearing was on July 31, 2013. Without giving Bolden a chance to speak, the trial court denied his request to represent himself. The court determined that it was in Bolden's and the court's "best interest" for Bolden to retain his appointed counsel because Bolden faced five "very serious charges" and "up to life in prison" if convicted. The court also explained that Bolden's case involved complex legal issues, and if Bolden were to represent himself, he "would not have the resources" to "depose all of the victims of the alleged offenses," whereas Bolden's appointed counsel would have the ability to "depose those individuals."

The relevant historical facts do not end there. A week later, Bolden filed a "motion to remove counsel," explaining that he had "no confidence in the lawyers provided" to him and would "not accept any public defender." Bolden requested that the trial court allow him to proceed pro se "from this day forward." And on August 20, 2013, Bolden renewed his request to represent himself by filing another "motion to remove counsel." There is no record of a ruling on either motion, and Bolden's case proceeded to trial a few months later with his appointed attorney.[3]

---

[3]To the extent this court now finds that Bolden "continued to demand a speedy trial and desired counsel if the court honored his speedy trial demands, even after the court definitively denied his motions," I respectfully disagree. Bolden was willing to accept court-appointed counsel if he received a speedy trial. But after his motions for a speedy trial were "definitively denied," at no time did Bolden condition his self-representation requests on receiving a speedy trial. To the extent this court also finds that "Bolden repeatedly expressed a desire to depose witnesses, even after the court informed him counsel could not do so if Bolden proceeded *pro se*," I believe that this statement, too, is unsupported by the full record.

-8-

Bolden's assertions of his right to self-representation were clear and unequivocal. Bolden insisted, orally and in writing, and with plain and unambiguous language, that he wished to represent himself at trial. Cf. Hamilton v. Groose, 28 F.3d 859, 862 (8th Cir. 1994) (concluding that the petitioner's request to represent himself was equivocal where he used ambiguous language and told the trial judge that he was "not very serious about wanting to represent" himself and that he was "not asking to proceed pro se totally"). Bolden's assertion of his right to self-representation was also unconditional. True, he said that he would accept the assistance of counsel if the trial court granted his speedy trial motions. But once these motions were denied, Bolden asserted in unqualified terms that he wished to represent himself. Although Bolden stated he wanted to depose witnesses, it was the trial court, not Bolden, who linked Bolden's desire to take depositions to his request to represent himself. And once the trial court informed Bolden that he would "never see" his counsel again if he proceeded pro se, Bolden no longer said anything about deposing witnesses. Instead, he reaffirmed in clear terms that he wished to represent himself.[4] See Hamilton, 28 F.3d at 862 (acknowledging that a defendant's waiver of his right to counsel may be "*both* conditional *and* unequivocal," and recognizing that such a waiver would be sufficient to invoke the right to self-representation under Faretta).

---

[4]Even if Bolden conditioned his desire for self-representation on an external event, I am doubtful this alone renders his request equivocal—at least on this record. See Finch, 983 F.3d at 977, 981 n.6 (rejecting the contention that a petitioner's comments "about the availability of 'standby counsel'" somehow "equivocate[s] his invocation to proceed pro se"); Carey v. Minnesota, 767 F.2d 440, 441–42 (8th Cir. 1985) (per curiam) (noting that the defendant validly "availed himself of his constitutional right to self-representation" when he informed the district court, "No. I don't [want to try the case myself]. I want a different attorney. But since I can't have one I'll conduct my own defense, yes"); Adams v. Carroll, 875 F.2d 1441, 1445 (9th Cir. 1989) (stating that although the petitioner's requests for self-representation were "sandwiched around a request for counsel," this "was not evidence of vacillation" because each request "stemmed from one consistent position" that the petitioner wished to represent himself "if the only alternative was the appointment" of the same attorney).

Looking at the facts in the record and applying the relevant legal standard, I believe the Missouri Court of Appeals' determination that Bolden's waiver was conditional and equivocal was not merely wrong—it was objectively unreasonable. In other words, fair-minded jurists would have no option but to conclude that the Missouri court's decision involved an unreasonable application of Faretta and its progeny, and thus was "so lacking in justification" that it cannot stand. Woods v. Donald, 575 U.S. 312, 316 (2015) (cleaned up); see Finch, 983 F.3d at 980–81 (concluding that it was "objectively unreasonable" for the Arkansas Supreme Court to find that the petitioner's statements of "I want to represent myself, your Honor. And that's all I'm telling you" and "I don't want no attorney" were an "equivocal" invocation of the right to self-representation); Buhl v. Cooksey, 233 F.3d 783, 792–93 (3d Cir. 2000) (holding that "no reasonable person" could conclude that a "request for self-representation was not made" where the petitioner "filed a written motion to proceed pro se" and told the trial court "I would like to represent myself" (cleaned up)). Indeed, it is difficult to imagine what more Bolden could have done to inform the court of his desire to proceed pro se.

It is also clearly established that a trial court must conduct a "searching or formal inquiry" when a defendant unequivocally invokes his right to self-representation. Patterson v. Illinois, 487 U.S. 285, 299 (1988); Von Moltke v. Gillies, 332 U.S. 708, 723–24 (1948) (explaining that "a judge must . . . make certain that an accused's professed waiver of counsel is understandingly and wisely made [through] a penetrating and comprehensive examination of all the circumstances"). This inquiry—often called a Faretta hearing—is intended to ensure a defendant's comprehension of such a decision. See Faretta, 422 U.S. at 835 (explaining that the trial court must make the defendant "aware of the dangers and disadvantages of self-representation, so that the record will establish that he knows what he is doing and his choice is made with eyes open" (cleaned up)); see also Von Moltke, 332 U.S. at 723–24.

Here, the record reveals that the trial court did not engage in such an inquiry of Bolden.[5] See Shafer v. Bowersox, 329 F.3d 637, 648 (8th Cir. 2003) (finding that the trial court failed to conduct the requisite "penetrating and comprehensive examination" under Faretta and Von Moltke where it "asked few questions and never probed beneath the surface of [the petitioner's] declaration that he wanted to waive his right" to counsel). And this failure by the trial court to conduct a proper Faretta inquiry requires the reversal of Bolden's conviction. See McKaskle v. Wiggins, 465 U.S. 168, 177 n.8 (1984) (stating that the denial of a defendant's right to self-representation "is not amenable to 'harmless error' analysis"); see also Finch, 983 F.3d at 980–81, 983 (granting the petitioner relief under § 2254 where the trial court failed to conduct an adequate Faretta hearing after the petitioner clearly and unequivocally asserted his right to self-representation); Buhl, 233 F.3d at 799–800, 807 (same).

Because I would affirm the district court's judgment granting habeas relief, I respectfully dissent.[6]

———————————————

[5]Indeed, the record reveals that the trial court's stated reasons for prohibiting Bolden from representing himself are contrary to clearly established precedent. See Finch, 983 F.3d at 981 (explaining that a petitioner's "technical legal knowledge," "the seriousness of the offenses," and "the likelihood of [the defendant] getting some serious time" are all "invalid bases" to deny a defendant's right to self-representation (cleaned up)); see also 28 U.S.C. § 2254(d)(1) (a petitioner shall be entitled to relief if the state-court decision "was contrary to . . . clearly established Federal law").

[6]Because the trial court failed to conduct a Faretta inquiry in the first instance, I would not reach whether Bolden's waiver was knowingly and intelligently made.

-11-